Judge Simpson
delivered the opinion of the Court.
John S. Cheshire and Ann Payne, were married on the 22d of October, 1844. On the 15th day of the same month, Ann Payne, by a deed duly executed and recorded, conveyed to her brother, John Payne, an undivided moiety of about two hundred and sixty acres of land, which they owned jointly, and upon which John Payne then resided. This deed was executed after the agreement to marry had been *626 entered into by John S. Cheshire and Ann Payne, and after the day for their marriage had been fixed by parties.
The tract of land referred to, had been conveyed to John Payne and his sister Ann, in the year 1841, by their father, John Payne, sr. It was at the instance of the latter, that the deed was made by his daughter Ann to her brother. Her father, to induce her to execute the deed, promised her, that she should after his death, have the farm upon which he resided. He states, that knowing there existed unfriendly feelings between the man his daughter Ann intended to marry, and her brother John, and believing that it would be to the advantage of all the parties, that his son should be the exclusive owner of the land upon which he resided, as it could not be divided without greatly injuring the whole tract, and that his daughter should be the exclusive owner of the other tract, he had proposed such an arrangement to his daughter, to which she assented, and the deed was executed to carry it into effect.
This action was brought in 1854, in the names of Cheshire and wife, against John Payne, jr., and John Payne, sr., to annul and vacate the deed executed by Ann to her bi’other John, before her marriage. The transaction is attempted to be assailed upon two grounds. First, that it was a fraud upon the marital rights of the husband. Second, that a fraud was perpetrated upon the daughter, by inducing her to convey away her land, upon a parol promise, which is not obligatory upon the father.
First. The petition after stating the making of the deed by the plaintiff Ann, to her brother, and the time of, and the circumstances attending its execution, contains the following allegation :— An entire and studied concealment, by father, brother, and sister, of this conveyance, and everything in relation to it, was preserved and kept, and plaintiff, John S., was destitute of all knowledge or information of it, until after he had arrived at the *627 place fixed for the wedding, and a few moments only before he was called upon to take his place upon the floor for the ceremony to be performed.”
1. To reader a disposition made by the wife of her property before mar riage, fraudulent against the husband, as against his marital rights, it must be made pending the trea ty of marriage, and without his knowledge.
2. If the husband be apprized before the marriage of the disposition by the intended wife of her property, he cannot claim to have been defrauded by it. If not-w i t h s t anding such knowledge he consummate the marriage contract he cannot afterwards complain, as such an act on the part of the intended wife would be a valid defense for a refusal to consummate the marriage contract. (Hobbs vs. Blandford, 7 Mon., 89, overruled.)
*627 The defendants denied the alleged intention to conceal the execution of the deed, and stated that it had been put upon record the same day that it was made ; but they did not alledge they had informed the plaintiff, John, of its execution, or that he had any actual knowledge of it before the time mentioned by him in his petition.
The only circumstances relied upon in this case, to render the deed fraudulent as against the husband, are its execution after the marriage contract was entered into, and the ignorance of the husband that it had been executed, until a few moments before he was married.
To render a disposition made by the wife, of her property before marriage, fraudulent against her husband, as being in derrogation of his marital rights and just expectations, it must be made pending a treaty, and in contemplation of marriage, and without the knowledge of her intended husband. Both of these elements must enter into the transaction, to constitute it a fraud against the rights of the husband.
If the husband be apprized.before his marriage, of the disposition which his intended wife has made of her property, he cannot, in any just sense of the term, be said to have been deceived by it. If, notwithstanding such knowledge, he deems it proper to consummate the marriage contract, the act is voluntary on his part, and he cannot afterwards complain that the disposition which his wife made of her property, is a fraud upon his marital rights. If the intended wife should secretly, and without the assent of the man she had contracted to marry, dispose of a part of her property, the marriage contract would be thereby avoided, and proof of such a secret disposition of her property would be a valid defence, if an action were brought against the intended husband *628 for breach of the promise of marriage. (Ashton vs. McDougald, 5 Beav. 56; Griggs vs. Staplee, 13 Jur. 32. See also, My. & K., 619, referred toin 1st vol. White's Leading Cases in Equity, Hare & Wallace’s Notes, p. 348.)
It is true, that it was held by this court in the case of (Hobbs vs. Blandford, 7 Mon., 469,) that a conveyance of the wife’s estate, between the time of the engagement and the marriage, was a fraud upon the marital rights of the husband, although he had notice of the conveyance before the marriage tools place. But that decision cannot be sustained either upon principle or authority.
Ignorance of certain facts, known to the other party, but concealed, or misrepresented, is an essential ingredient to constitute fraud. If all the facts are known, there can be no deception; and if there be no imposition or deception, there cannot be any fraud. In conformity with this view it has been repeatedly decided, and seems to be the settled doctrine of the courts, both in England and in this country, that if the husband has notice, or knowledge of the settlement or alienation, before the marriage, the transaction cannot be impeached. (Terry adm'r. vs. Hopkins &c., 1 Hills Chan., 15; McClure vs. Miller, 1 Bailey's Equity, 108; Fletcher and wife vs. Ashley &c., 6 Grattan, 322. St. George vs. Wake, 1 My. Keene, 610; 7 Con. Eng., C. R., 188.)
In the last named case, the chancellor said “ it might perhaps be affirmed, that excepting Goddard vs. Snow, no case exists of a conveyance by the wife, though without consideration, being set aside simply because made during a treaty of marriage, and without the knowledge of the intended husband. Yet, it is certain that all the cases in which the subject is approached, treat the principle as one of undoubted acceptance in this court-; and it must be held to be the rule of the court, to be gathered from an uniform current of dicta, though resting upon a very slender foundation of actual decision touching the simple *629 point. As, however, everything depends upon the fraud supposed to be practiced upon the husband, it is dearly essential to the application of the principle, that the husband should up to the moment of the marriage have been kept in ignorance of the transaction.”
3. The chancellor will not draw nice distinctions in regard to the time at which the information of the conveyance is co mmnnioated to the intended husband; it is sufficient if it be before the marriage ceremony take place.
But the question still arises in this case, whether the husband should be regarded as having been kept In ignorance of the transaction, or whether the knowledge of it at the time it was imparted to him, should be deemed sufficient to repel the legal imputation of fraud.
As it is essential to constitute the fraud, that the husband should remain ignorant of the transaction until the marriage ceremony takes place, it follows as a necessary consequence, that his knowledge of it at any time previous to that period, will operate to prevent him from impeaching the conveyance on the ground of fraud. In reference to his knowledge, the law fixes but one period, and that is the time of the marriage; it does not draw any nice distinctions with respect to the length of the time before that period, but considers any previous time as sufficient, and leaves the husband to act for himself, according to his own sense of justice and propriety. Until the marriage actually takes place, he is at liberty to retract, and the law justifies him in so doing, if he be notified that his intended wife has, without his assent, made a settlement of her estate that will be prejudicial to his marital rights. But, if with this knowledge, acquired at any time before the marriage actually takes place, he voluntarily complies with his previous engagement, he connot complain that he was deceived, nor will the transaction be deemed to be a fraud upon his rights as husband.
As, therefore, the husband has admitted that he was informed of the transaction before the marriage ceremony was performed, he cannot assail it on the ground that it was fraudulent as to him, although that information was only imparted to him after he had arrived at the place fixed for the wedding, and *630 a few moments only before the marriage did take place.
4. A parol pro mise to convey land is not absolutely void.— Thepromiseehas the right to have a performance or a rescisión at the hand of the chancellor; if the promisor is willing to per form, the promisee cannot have a rescisión.
We are not, however, prepared to decide, that the deed in question would be invalid, even had the husband remained ignorant of its existence until he was married. The doctrine we have been considering, has been usually applied to cases of gifts, and voluntary settlements and alienations; if it has any application where the conveyance has been made for a valuable consideration, it can only be in cases where it is executed for the purpose, and with the effect, of depriving the husband of the interest he would have had in the property of his wife, if the conveyance had not been made. In such a case, there would be actual fraud, against which the husband would be entitled to relief. But here, no such object was contemplated by the parties ; the motives by which they were actuated were not culpable ; the consideration upon which the deed was executed was adequate; there was no effort to conceal the transaction, the deed having been recorded in the county in which all the parties resided ; nor was the arrangement one that if carried into effect, would necessarily prejudice, at least to any material extent, the rights of the husband. It is not, however, necessary in this case to decide this question, inasmuch as the husband was apprized of the execution of the conveyance before he was married.
Second. But is the conveyance valid so far as the wife herself is concerned ? She parted with her property in consideration of a verbal promise that she should have another tract of land in lieu thereof, after the death of her father. This promise, although not legally enforceable, kis not void; and as her father in his answer, professes a willingness to comply with it, the contract cannot, according to the settled doctrine on the subject, be rescinded on this ground.
As, however, the verbal promise was not obligatory, the plaintiffs had a right to bring this action to *631 require a fulfillment of it, and if that could not be obtained, then a rescisión of the contract. The execution of a will by the father, in which he has devised the land to his daughter, cannot be regarded in law, as a compliance with the spirit and meaning of the contract, because he has the power of revocation, and may exercise it at any time he deems proper, unless he should be rendered unable to do it, by the want of sufficient capacity for its accomplishment. The plaintiffs have a right to have the property secured to the wife, according to the terms of the contract; and to effect this object, the father should be required to convey the land to his daughter, subject to his life estate therein.
The" circuit court having rendered a judgment vacating the deed executed by the wife before her marriage, and requiring John Payne, jr., to re-convey the land to his sister, and making him accountable for rents, that judgment being inconsistent with the views expressed in this opinion as to the law of the case, is deemed erroneous.
Wherefore, said judgment is reversed and cause remanded, that a judgment may be rendered in conformity with this opinion.