OF THE

# COURT OF APPEALS OF KENTUCKY,

JANUARY TERM, 1890.

CASE 1—PETITION EQUITY— MARCH 8, 1890.

90    1
112 766

## · Murray v. Murray.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. A CONVEYANCE BY AN INTENDED HUSBAND UPON THE EVE OF MAR-
RIAGE will not be regarded as a fraud upon the marital rights of the
intended wife, unless made without her consent or knowledge.
2. GIFTS TO CHILDREN IN FRAUD OF WIFE.—Gifts made by a husband
to his children by a former marriage, with the fraudulent intent to
·  deprive the wife of her marital rights, are not binding on the wife.
3. SAME.--While the wife can not complain of reasonable gifts or ad-
vancements by the husband to his children by a former marriage
yet if the gifts constitute the principal part of the husband's estate,
and be made without the wife's knowledge, a presumption of fraud
arises, and it rests upon the beneficiaries to explain away that pre-
sumption; and in judging of the good faith of the transaction the
court must look to the condition of the parties and all the attending
circumstances.

In this case the husband, within a short time after his third mar-
riage, gave to his three children by his former marriages, without his
wife's knowledge, between thirty and forty thousand dollars.    What
he thus gave, together with his estate remaining at his death, amounted
to about forty-six thousand dollars.    Held—That the gifts, under all

the circumstances, must be regarded as in fraud of the marital rights of the wife, who, after allowing for reasonable advancements to the children, is entitled to ten thousand dollars as her distributable share of the estate.

GEO. C. DRANE FOR APPELLANT.

1. The several gifts and conveyances by the testator to his children, except of the four pieces of real estate which came to them by their mother, should be set aside, because they were made by him with the fraudulent intent to deprive the plaintiff of the interest therein, to which she was entitled as his widow.

Voluntary conveyances or gifts by the husband to his children, or others, of all or the bulk of his estate pending a marriage treaty, without the knowledge or concurrence of the wife, will be presumed to be fraudulent, and the onus is upon the grantees or donees in a controversy with the widow to show that no fraud was intended or practiced against her. (Fennessy v. Fennessy, 8 Ky. Law Rep., 478.)

Gifts of personal property by a father to his children during the life of the wife, when made for the purpose of defrauding the wife, will be set aside to the extent they may affect her rights as widow. A court of equity will not allow the husband to defeat the wife's marital rights by indirect methods. (Mannikee v. Beard's Adm'r, 8 Ky. Law Rep., 736; Bishop's Law of Married Women, vol. 2, sec. 351; Davis v. Davis, 5 Mo., 189; Stone v. Stone, 18 Mo., 389; Tucker v. Tucker, 29 Mo., 350; Hays v. Henry, 1 Md. Ch., 337; Smith v. Smith, 2 Halst. Ch. (N. J.), 521; Dunnock v. Dunnock, 3 Md. Ch., 140; Thayer v. Thayer, 14 Vt., 122.)

2. From the representations made by the husband to the wife before marriage as to the value and description of his estate, the law implies a promise upon his part that she should share as a wife in his estate, and, therefore, the secret gifts and conveyances by the husband were a fraud upon the wife. (Dearmond v. Dearmond, 10 Ind., 194.)

3. The alleged gifts should be set aside, because they were only colorable, and it was never intended by the parties that they should take effect as gifts, except upon the contingency that the plaintiff should survive her husband.

WM. LINDSAY AND JOHN B. LINDSEY FOR APPELLEES.

1. The widow is entitled only to a distributive interest in the personal property owned by the husband at his death, and can claim none which has been disposed of by him, except on grounds which would authorize him to set aside the disposition as having been procured by fraud on him. (Gaines v. Gaines, &c., 9 B. M., 298; Oldham v. Sale, 1 B. M., 77; Petty v. Petty, 4 B. M., 219; Petty v. Webb, 6 B. M., 468; Padfield v. Padfield, &c., 78 Ill., 16.)

Murray v. Murray.

Under our statute, advancements made to distributees are not to be taken as part of the decedent's personal estate in estimating the distributable share of the widow therein. (Gen. Stats., chap. 31, sec. 16.)

2. The entire proof negatives any intention on the part of the decedent, or either of his sons, in any manner whatever, to defraud the appellant. The conveyances and transfers by him in pursuance of his promise to his former wife is evidence of his good faith in the entire matter, negativing the idea of any fraud. (Fennessy v. Fennessy, 84 Ky., 519.)

3. The gifts of the stocks and bonds by the decedent to his sons were complete. (Wait's Actions and Defenses, vol. 3, pp. 490-492; Morawetz on Corporations, sec. 328; Fraser v. Charleston, 11 S. C., 486; McNeil v. Tenth National Bank, 46 N. Y., 324, 332.)

4. There is no averment made by appellant in her pleadings or proof that any of the gifts made by the decedent to his sons were made in contemplation of his death, or at a time when he was ill, and so the authorities relied on by appellant do not apply.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

In May, 1882, the appellant, Jane C. Murray, then Jane C. Jillson, first met Henry H. Murray. He was then a widower for the second time. During the summer of that year they became engaged to marry, the Christmas following being the time fixed for the consummation of the agreement. It was, however, postponed from time to time at his instance, and upon one exeuse or the other, until February 17, 1884, when they were married. He had three children living, to wit: William H. Murray, by his first wife, and James A. and John W. Murray, by his second wife. When he and the appellant became engaged he was a gentleman of considerable fortune, being worth, in lands and personalty, probably not far from seventy thousand dollars. This was then known to her. They lived together until December, 1886, when he died.

In April, 1887, the appellant brought this action, seeking a settlement of his estate, and the cancella-

tion as to herself of certain conveyances and gifts by
him to his three sons upon the ground that they were
in fraud of her marital rights.   Subsequent to their
engagement to marry, and on August 17, 1882, he
conveyed to his sons, James A. and John W. Murray,
four houses and lots, worth four or five thousand dol-
lars.   It is conceded, however, in argument by appel-
lant's counsel, that the consideration recited in the
conveyance, to wit: that this property had come by
the mother of the grantees, is true.   The testimony
so shows, and no recovery is now asked on account
of it.   It is, therefore, out of the case, and needs no
further mention.   Subsequent, also, to their engage-
ment he, by a deed dated August 1, 1882, and ac-
knowledged on October 30, and recorded November
28, following, conveyed to his sons, James and John,
in consideration of love and affection, the homestead
where they were living, and another house and lot,
the two pieces of property being worth from fifteen
to twenty-five thousand dollars.

The appellant admits, however, both in pleading
and her evidence, that he informed her before the
making of this conveyance of his intention to exe-
cute it, and she made no objection to it.   She says,
however, that she supposed it was to be an absolute
one, by way of advancement to the two sons, and
that it was not unreasonable, in view of his financial
condition as stated to her by him.   She also says he
then promised to do right by her, and provide well
for her.

She now claims, however, that the deed was in the
nature of a testamentary disposition of the property,

and in fraud of her coming marital rights, because it provided :

"But there is reserved in said party of the first part (H. H. Murray) a right for life, at his option, to occupy, use, lease and enjoy the profits of each and all of. said property for ·and during his natural life."

A conveyance upon the eve of marriage, to be regarded in equity as a fraud upon the marital rights of the intended wife, and, consequently, not binding upon her, must be made without her consent or knowledge.   (Leach, &c., v. Duvall and Wife, 8 Bush, ·201.)

Here she knew of it; and the fact that it conveyed a less estate than she supposed can not serve as a ground of complaint for her.   It was an advantage to her.   She, together with her husband, enjoyed, during his life, the use of at least the homestead, if not all of the property covered by the deed.

The conveyances named appear to have embraced all the real estate owned by H. H. Murray.   April 3, 1884, he, in consideration of love and affection, assigned to his son, James A. Murray, a judgment against the Blantons, secured by mortgage lien, and amounting to about seven thousand dollars.

The son says that his father had told him some four or five years before that he was to have this debt; and in this statement he is supported by the evidence of ˙ the draftsman of the assignment of the debt, who says that the father said when he executed it that he had theretofore given it to the son.   The gift was, however, not perfected until April 3, 1884. At the same time the father, for the same considera-

tion, assigned to the same son a mortgage debt on one Herrman for about four thousand dollars; also a certificate for thirty shares of bank stock, worth four thousand five hundred dollars. In November, 1885, he gave to James A., for John Murray, United States bonds of the value of thirteen thousand seven hundred and fifty dollars; also, at about the same time, he gave to his son William railroad bonds, payable to bearer, worth four thousand eight hundred dollars.

Thus we see that shortly after his marriage he gave to his three sons about thirty-four thousand dollars. With the last of these gifts his fortune was substantially gone. The wife had no knowledge of those made after their marriage. At his death he was worth but about twelve thousand five hundred dollars, consisting altogether of personalty. A few days after his marriage he made a will, by which he bequeathed all his estate without naming his wife.

It is contended for her that these gifts were merely colorable, and intended to be effective only in case his wife outlived him. In support of this, it is shown that the bank stock was never transferred upon the bank books until after his death; that the checks for the dividends thereon, and for the interest on the United States and the railroad bonds, were issued pay able to him until his death; and there is some evidence tending to show that he took some control of the property which was purchased in payment of the Blanton debt

The transfers, however, vested the donees with either the legal or equitable title, and there is rebutting testimony showing that they controlled the property

Murray v. Murray.

from the date of the gifts, and received the money upon the checks issued in payment of the bank dividends, and the interest upon the bonds.

The question remains, however, whether the gifts of the personalty are, under the circumstances, to be regarded as having been made in fraud of the appellant's marital rights.

The sons testify, and they are doubtless honest in the belief, that they were *bona fide*, and made without any intention to defraud the appellant as to her inchoate rights in the estate of her husband. It is difficult, however, in the face of this record, to believe that there was not a purpose upon the part of the husband to lessen the wife's interest in his estate, in the event she survived him, by giving it to his sons.

We do not mean to intimate that a husband can not make any advances to his children, and must preserve his estate intact to meet the inchoate claims of his wife. If the advancements or gifts be reasonable when considered with reference to the amount of property owned by the husband, and his purpose be to provide for the children, and not to defraud the wife, then she can not complain, although they, in fact, diminish the property to which her inchoate rights have attached by the marriage. It is a question of intention upon the part of the grantor. If the property given away constitute all or the principal part of the husband's estate, and be such an advancement as is unreasonable when compared with his entire property, then while it should not be conclusively presumed to have been made in fraud of the wife's marital rights,

yet *prima facie* it should be so regarded, and the *onus* of showing otherwise be cast upon the donee. Each case must depend upon its own circumstances. If not done to prevent the wife from enjoying a reasonable portion of the husband's estate, or to deprive her of such an interest in it as she might reasonably expect upon her marriage, then the advancement should be upheld as to her. The court must look to the condition of the parties and all the attending circumstances in judging of the transaction. It should take into consideration the amount of the husband's estate, the value of the advancements, the time within which they are made, and all other *indicia* which will serve to determine the intention accompanying the transaction. If, however, a gift or voluntary conveyance of all or the greater portion of his property be made to his children by a former marriage without the knowledge of the intended wife, or it be advanced to them after marriage without the wife's knowledge, a *prima facie* case of fraud arises, and it rests upon the beneficiaries to explain away such presumption. If the husband have an ample estate, he may, of course, give to the children of a former marriage a reasonable portion of it, and the wife can not complain. If this were not the rule, then the hands of the husband would be completely and unreasonably tied, and he could make no advancement to his children by a former marriage, however large his estate, and however needful to them, but he would be compelled to hold it all, except from purchasers for value, to meet the inchoate claims of the wife. Justice Story says that reasonable provision

may be made for the children of a former marriage
if done under such circumstances as evidence good
faith. (1 Story's Equity Jurisprudence, section 273.)

In this instance, however, the husband, by successive
gifts, advanced to his children, without the knowledge
of his wife, nearly all his large estate. They were not
her children, and the transfers deprived her of that
reasonable expectation as to the enjoyment of a portion
of his property which she had a right to form at their
marriage. A *prima facie* case arises in her favor.
It is attempted to overturn it with the claim that the
greater portion of the husband's property came by
the second wife; but while it appears that she derived
some property from her mother, yet the amount of
it is not even approximately shown, and is a matter
of conjecture.

The husband, within a comparatively short time after
his marriage to the appellant, and without her knowl-
edge, gave to his children, by his former marriage,
between thirty and forty thousand dollars. What he
so gave, together with his estate remaining at his death,
amounts to about forty-six thousand dollars.

Allowing for reasonable advancements to the chil-
dren, the wife was, in our opinion, entitled to ten
thousand dollars as her distributable portion of the
estate. This, it seems to us, is the equity of the case.
The gifts made to the children subsequent to her mar-
riage must, under the circumstances, be regarded as
having been made in fraud of her marital rights; and
the amount of them, together with the estate of the
husband remaining at his death, less what would have
been reasonable advances to the children, must be esti-

mated in determining her rights. The Chancellor will allow, as of the date of his decree, the sum above named. Any equities which may exist between the other parties to this action remain open for future settlement, not being now presented for determination.

The judgment below, and which allowed the appellant, as her distributable portion, but one-third of the estate in her husband's possession at the time of his death, is reversed, and the cause is remanded for further proceedings consistent with this opinion.