## Rowe et al v. Ratliff.

(Decided March 2, 1937.)

218

J. E. CHILDERS and A. F. CHILDERS for appellants.

STEELE & VANOVER for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Okie Rowe, who was formerly the wife of Bee Ratliff, deceased, instituted this action in the Pike circuit court for the purpose of setting aside so far as it affected her dower as the widow of Bee Ratliff, deceased, a deed to a tract of land that he caused to be conveyed to Mary F. Ratliff, his mother.

Okie Rowe and Bee Ratliff were married to each other on March 19, 1926. They lived together as man and wife until his death, which occurred on the 5th day of April, 1932. When they married, he was a widower. He and his former wife failed to agree and were divorced. As a result of that marriage, they had one son, who is one of the plaintiffs in this action, known as Truba Ratliff. As a result of his marriage to Okie Rowe, they had three children. One died before his decease, and the other two, whose names are Florene Ratliff and Kent Douglas Ratliff, eight and four years old, respectively, were living at his death. Before her marriage to Bee Ratliff, he had made a trade with Emmett Belcher for the purchase of two tracts of land. The trade however, was not consummated until the 21st day of May, 1926, a little more than two months after his marriage to Okie Rowe. From the evidence, which is undenied, he purchased the two tracts of land now in controversy from Emmett Belcher and agreed to pay him the sum of $4,000 cash. In pursuance to that purchase, Emmett Belcher had prepared a deed conveying the land to Bee Ratliff, himself, and tendered to him said deed. When he did so, the said Ratliff read it, re-

fused to accept it, and announced to Belcher, for the first time, that he desired the deed made to his mother, Mary F. Ratliff. This announcement annoyed Belcher so much that he made complaint because he had not told him before he had the deed prepared and saved him of this extra trouble. However, he had another deed prepared and made and executed same to Mary F. Ratliff. The consideration shown in the deed was $1, when in fact the real consideration was $4,000, which was paid to the said Belcher by a check of Bee Ratliff on the Pikeville National Bank, situated in Pikeville, Ky. After the deed was delivered and accepted, it was recorded. It is shown further by the evidence that when the land was first conveyed, there were two old houses on it of very small value. Immediately the said Bee Ratliff with his wife, who was then Okie Ratliff, took possession of the land and lived upon it as she states, "as their own," until his death; she continues to live on it up to this time. She claims that the deed executed by Belcher and wife to Mary F. Ratliff, was a fraud upon her rights so far as it affected her dower. Florence Ratliff, Kent Douglas Ratliff, and Truba Ratliff are party plaintiffs to the action and in their petition they ask that the deed in toto be set aside and held for naught.

It appears from the record that at the time the deed was made and executed, neither Florene nor Kent Douglas Ratliff were born. Truba Ratliff, being a child of a former marriage, was living. Consequently, in the beginning, we will say that neither of the plaintiffs, other than Okie Rowe, under the law can assert their rights to the land in controversy because neither of them have such an interest now, nor had such an interest, when the deed was made that would authorize a court to grant them any remedy. However, Okie Rowe, being the wife of Bee Ratliff at the time when said deed was made, had a potential right of dower in whatever lands her husband may have owned, which consummated into a right of dower at his death. This interest in said land cannot be taken from her without her consent. The circuit court of Pike county rendered judgment in favor of appellee. Appellants appeal.

It is claimed that when the land was purchased by Bee Ratliff he was acting merely as the agent of Mary F. Ratliff and purchased same for her; that she paid

the consideration herself and for that reason Bee Ratliff owned no land at his death in which Okie Rowe had any interest either as dower or otherwise. To sustain that position, Mary F. Ratliff testifies. The competency of her testimony, as the record shows, was waived, or at least no objections were made to it. She undertakes to testify that she paid for said land; that she gave to her son, Bee Ratliff, the $4,000, which was part cash and part checks. She does not undertake to say how much cash or how much was in checks or whom the checks were on, or whether they were her checks, or checks of other parties, nor does she offer any evidence from any one who gave her the checks. The only evidence that might be considered a corroboration of her statement is that one of the bankers stated that her son, Bee Ratliff, placed in the bank in money and checks on July 23, 1926, $4,274.22; that a few days after making the deposit he drew a check on the same bank for the $4,000 payable to Belcher, leaving to his credit $289.34, which shows that he evidently had more money in the bank than the amount deposited as shown by his balance. She states that she made the money by peddling, selling such things as she raised at her home and sold it to the stores in the community; that she never took possession of the property at any time, but left it in the possession of her son, Bee Ratliff; that she listed the land and paid the taxes, at least a portion of the time, but was unable to produce any tax receipts, or to show by the sheriff or the collector the amount paid. On the other hand, it was shown by one witness that she listed her own property, but refused to list this property—left that for her son to do. It is shown from the evidence that from the time this land was conveyed to her, Bee Ratliff and his wife lived on it until he died; used it as if it was their own; erected as many as eight houses on it; a residence with many modern conveniences, bath rooms and waterworks in the house and other conveniences at the expenditure of about $6,000. The residence consisted of five rooms with a hall and breakfast room with a concrete basement; he was about three years in building the house. He also erected six or seven boxed houses containing four rooms each, worth about $500 each; expended during the time, in the erection of the houses referred to, more than $10,000; that she collected no rent from Bee Ratliff during his lifetime, for the use of the land or for the use

of the tenant houses, which tenant houses were rented pretty regularly; that in the erection of these houses, Bee Ratliff furnished the money, bought the material, and paid the laborers, except the husband of appellee did some work on the houses in their erection. There is no evidence as to whether he was paid or not. It is also in evidence that during Bee Ratliff's lifetime he sold two small tracts of land to other parties from the boundary deeded by Belcher and took charge of the proceeds. We are convinced from the evidence that appellee paid no part of the purchase price of the land or for the improvements placed on it; that the deed was caused to be made to her by Bee Ratliff for the purpose of defeating appellant, Okie Rowe, out of her potential right of dower in said land.

This court by a long line of cases has time after time set aside such conveyances, wherein it affected the marital rights of a wife in the husband's land. We look upon this matter of marriage and the rights growing out of it as being very sacred and divine.

As this court said in a very prominent case many years ago, in Muir v. Muir, 133 Ky. 125, 92, S. W. 314, 316, 28 Ky. Law Rep. 1355, 4 L. R. A. (N. S.) 909:

"Marriage, as it affects property rights, rightfully affects in some degree all that the husband then has and all that he has in prospect."

In another case, Anderson et al. v. Anderson, 194 Ky. 763, 240 S. W. 1061, 1063, the court, in discussing conveyances like the one we have under consideration, said:

"It has long been the settled rule in this state that a conveyance of real estate, made by one after an agreement to marry, without consideration and without the knowledge or consent of his intended wife, is a fraud on the wife, and will be declared void to the extent that it deprives her of dower in the real estate conveyed. Petty v. Petty, 4. B. Mon. 215, 39 Am. Dec. 501; Murray v. Murray, 90 Ky. 1, 13 S. W. 244, 11 Ky. Law Rep. 815, 8 L. R. A. 95."

In Murray v. Murray, supra, in discussing a case similar to the one in controversy, the court said that where a deed is made to another, as in this case, and

paid for and possession taken of it, as in this case, or where a gift is made and no consideration paid to another as a basis of the conveyance, it is prima facie evidence of fraud, and the onus of showing otherwise is on the donee.

"If a husband makes a gift of all or a greater part of his property * * * without the * * * consent of his wife, a prima facie case of fraud arises, and it rests upon the beneficiaries to explain away such presumption," which appellee in this case has not done. Gibson v. Gibson, 12 Ky. Law Rep. 636; Leach, etc., v. Duvall and wife, 71 Ky. (8 Bush.) 201; Wilson et al. v. Wilson, 64 S. W. 981, 23 Ky. Law Rep. 1229.

The evidence here is conclusive that all the property that Bee Ratliff had at his death was a small amount of personal property, outside his interest in the real estate and houses he built on it. We do not say that it would have been a fraud for Bee Ratliff to have deeded his land to his mother, had she been poor and needy and dependent and had he sufficient estate in addition to caring for his children, or estate, in addition, out of which the dower lost by his widow might have been set aside to her. Here the proof discloses that he had practically nothing except the land now in controversy. There is no power on earth given to a husband by the exercise of which the inchoate right of dower of his wife could be taken from her without her consent. The right of dower has been recognized to be so sacred to the wife, even the potential right of dower, that the husband, or a prospective husband, cannot convey his real estate or even his personal property or give it to others for the purpose of taking from her her rights. The only way that the wife can lose her dower is to either sell it, forfeit it, or die and leave it.

From reading this entire record, we have been deeply impressed with a lack of evidence upon the part of appellee to overcome the prima facie evidence, that the deed was without consideration and a fraud, or any evidence worthy of our approval, showing that she in fact and in reality paid for the land in good faith and was the owner of it at the death of her son, Bee Ratliff. The remarkable point that we see in the case is that if the land was purchased, paid for, and deeded to Mary F. Ratliff, why was it that she permitted it to be

used until her son died without collecting any rents, either from him or the tenants on the place, without looking into the expenditures that he was making upon the land, spending as much as $8,000 or $10,000 in the erection of new buildings, without any reckoning as to the cost, whether it was necessary and proper, and then after his death to permit appellant to live upon and use said land from 1932, the date of the death of her husband, until this action was brought, even after she had married again, without any objection until just prior to the institution of this action? Not only do these facts impress us as being prima facie fraudulent, but also convince us that the whole transaction on the part of appellee and her son, so far as it affected the dower rights of appellant, was an actual fraud.

It is therefore our judgment that the deed set out in the pleadings is a fraud on the marital rights of appellant and so far as it might operate to deprive her of her dower in the land therein embraced is inoperative and void.

It is our judgment that on the return of the case that commissioners should be appointed to ascertain the dower rights of appellant and to lay off same to her, as the law directs.

Judgment reversed for proceedings consistent herewith.

Ratliff, J., not sitting.