John Robert MATHIAS, Trustee of the Joseph V. Martin Trust; Lynne Jane Mathias; John Robert Mathias, Her Husband; Roxanne Jo Martin; John Grover Martin; and Elizabeth Martin, His Wife, Appellants,

v.

Lillian G. MARTIN, Individually and Lillian G. Martin, Administratrix of the Estate of Joseph V. Martin, Deceased, Appellees.

No. 2000–SC–1001–DG.

Supreme Court of Kentucky.

Aug. 22, 2002.

---

14. *Id.* at 467 U.S. 431, 448–450, 104 S.Ct. 2501, 81 L.Ed.2d 377, 390–391.

15. *Id.* at 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377, 387–388.

Joel B. Turner, Rebecca A. Wood, Frost Brown Todd LLC, Susan Simpson Wettle, Brown, Todd & Heyburn, Louisville, Counsel for Appellants.

Glen S. Bagby, J. Robert Lyons, Woodward, Hobson & Fulton, LLP, Lexington, Counsel for Appellees.

LAMBERT, Chief Justice.

Resolution of this case requires our consideration of whether and to what extent engaged persons acquire dower rights in the property of the other. Immediately prior to the marriage of Joseph V. Martin and Lillian G. Martin, Joseph conveyed valuable real property to an irrevocable trust controlled by him with the effect of preventing Lillian from acquiring any rights in the real property as a result of the marriage. Despite the conveyance and knowledge of the conveyance by Lillian, the marriage was solemnized and the parties lived together as husband and wife until Joseph's death twelve years later. After Joseph's death, Lillian brought this action claiming that the conveyance constituted a fraud on her dower rights.

The week before the wedding, Joseph presented Lillian with an antenuptial agreement. Lillian, with advice of counsel, refused to sign the agreement and informed Joseph of her decision the day before the wedding. Also on the day before the wedding, Joseph informed Lillian that he had signed a trust instrument and that he had conveyed the real estate that he owned, Highcroft Farm, to the trust. The farm represented the bulk of his assets. Lillian did not see the trust document or deed at that time. The irrevocable trust provided that Joseph would receive the income from the real property until his death at which time the trust would terminate and the trust assets would be distributed to Joseph's children. On the wedding day but before the ceremony, Joseph's daughter created an addendum to the trust that included "all of J.V. Martin's things." Lillian had no knowledge of the addendum.[1] Lillian and Joseph were married.

Throughout their twelve-year marriage, Joseph and Lillian resided on the farm. At Joseph's death, Lillian was appointed administratrix and in that capacity and individually, she brought this action claiming the antenuptial conveyance of the real property to the trust constituted a fraud upon her dower rights. The trial court granted summary judgment to Lillian, setting aside all purported transfers of real and personal property to the trust. The trial court reasoned that although former law may have been that knowledge of the transfers by a prospective spouse would defeat a claim of fraud upon dower, subse-

---

1. The parties have settled with respect to the transfer of personal property. Only the status of the farm is at issue here.

quent cases have changed the prevailing rule. In its final judgment, the trial court ordered all transfers of property to the trust set aside and the deed conveying the farm to the trust void.

The Court of Appeals agreed with the trial court. The Court of Appeals held that while *Cheshire v. Payne*,[2] *Murray v. Murray*,[3] *Smith v. Erwin*,[4] and *Anderson v. Anderson*,[5] articulated Kentucky law, the law has been modified by subsequent cases so that even with knowledge the transfer of property before marriage is a fraud on dower rights unless the intended spouse gives consent. For this proposition the Court of Appeals relied on *Rowe v. Ratliff*,[6] *Martin v. Martin*,[7] *Anderson v. Anderson*,[8] and *Harris v. Rock*.[9] We granted discretionary review and now reverse the court below.

As shown above, it appears that the decisions of this Court are somewhat divergent. Certain of our decisions hold that conveyance or transfer prior to marriage with knowledge or consent precludes a finding of fraud. Our more recent decisions seem to hold that despite knowledge, there must be consent. The issue we have not decided heretofore is whether knowledge without express consent, but followed by the act of marriage, is sufficient to preclude a finding of fraud.

Appellants argue that when an intended spouse marries with knowledge of a conveyance of property prior to marriage, consent is implied as to the conveyance and there can be no fraud. Appellants assert that this rule was established in *Cheshire v. Payne* and later cases and has

not been modified by more recent cases as the Court of Appeals concluded.

Appellee argues that the Court of Appeals was correct in its holding that the intended spouse must give consent to the premarital conveyance of property. Appellee contends that her consent to the transfer cannot be implied because of her express refusal to sign the antenuptial agreement. She also denies that she had full knowledge of the transfers of property but it is clear from her deposition testimony that she knew the farm had been placed in trust and knew that Joseph's children had gained control. She indicated an unhappiness with the turn of events but stated that she was not marrying him for his money. Finally, she argues that fraud on dower does not turn on deception by the transferor but upon the transferor's intent to deprive the intended spouse of dower rights.

The older cases addressing fraud on dower support Appellants' position in this case. In *Cheshire v. Payne*, the appellee was engaged to be married. Prior to the wedding, the appellee conveyed real estate to her brother without the knowledge of her fiancé. The fiancé learned of the conveyance only moments before the marriage but proceeded with the ceremony. The Court held that because the fiancé had knowledge of the conveyance before marrying, he could not claim that he was deceived by the appellee. "Ignorance of certain facts, known to the other party, but concealed, or misrepresented, is an essential ingredient to constitute fraud. If all the facts are known, there can be no de-

**2.** 55 Ky. 618 (1855).

**3.** 90 Ky. 1, 13 S.W. 244 (1890).

**4.** Ky., 82 S.W. 411 (1904).

**5.** 194 Ky. 763, 240 S.W. 1061 (1922).

**6.** 268 Ky. 217, 104 S.W.2d 437 (1937).

**7.** 282 Ky. 411, 138 S.W.2d 509 (1940).

**8.** Ky.App., 583 S.W.2d 504 (1979).

**9.** Ky., 799 S.W.2d 10 (1990).

ception; and if there be no imposition or deception, there cannot be any fraud."[10] In *Murray v. Murray,* the Court held that "a conveyance upon the eve of marriage, to be regarded in equity as a fraud upon the marital rights of the intended wife, and, consequently, not binding upon her, must be made without her consent or knowledge."[11] *Smith v. Erwin* held essentially the same and the 1922 case of *Anderson v. Anderson* made this statement

> It has long been the settled rule in this state that a conveyance of real estate made by one after an agreement to marry, without consideration and without the knowledge or consent of his intended wife, is a fraud on the wife and will be declared void to the extent that it deprives her of dower in the real estate conveyed.[12]

However, the Court of Appeals interpreted more recent cases as changing the law in this regard. In *Rowe v. Ratliff,* the intended husband, after agreeing to marry, decided to trade some of his real property. However, the deed was not executed until after the marriage. The Court noted that "Okie Rowe, being the wife of Bee Ratlif at the time when said deed was made, had a potential right of dower in whatever lands her husband may have owned, which consummated into a right of dower at his death."[13] The Court quoted from *Anderson,* as above, without criticism impliedly accepting the proposition that a prospective wife need only have knowledge to preclude a claim of fraud. The Court in *Rowe* also stated that

> There is no power on earth given to a husband by the exercise of which the inchoate right of dower of his wife could be taken from her without her consent. The right of dower has been recognized to be so sacred to the wife, even the potential right of dower, that the husband, or a prospective husband, cannot convey his real estate or even his personal property or give it to others for the purpose of taking from her rights. The only way that the wife can lose her dower is to either sell it, forfeit it, or die and leave it.[14]

Nothing in this language is more than a forceful restatement of existing law.

In *Martin v. Martin,* the soon-to-be husband transferred most of his personal property to his sister prior to the wedding apparently without his fiancé's knowledge. Citing *Murray v. Murray,* the Court noted that "an intention to defraud the wife must be proved but that a transfer of a bulk of the husband's property under the circumstances disclosed raised a prima facie case of fraud."[15] Notably, the Court did not criticize or distinguish *Murray* even though it held that an intended wife cannot be defrauded if she gives consent or has knowledge. The Court concluded by stating "a man may not make a voluntary transfer of either his real or personal estate with the intent to prevent his wife, or intended wife, from sharing in such property at his death and that the wife, on the husband's death, may assert her marital rights in such property in the hands of the donee."[16] While this broad language contains no reference to knowledge, in fact, the fiancé was without knowledge and the statement must be read in the context of the facts before the Court. As such, it

---

10. *Cheshire,* 55 Ky. at 628.

11. *Murray,* 13 S.W. at 245.

12. *Anderson,* 240 S.W. at 1063.

13. *Rowe,* 104 S.W.2d at 438.

14. *Rowe,* 104 S.W.2d at 439.

15. *Martin,* 138 S.W.2d at 514.

16. *Id.* at 515.

merely amounts to a statement of the basic prohibition of fraud on dower whereby one conveys property that is or may be a part of the marital estate without the knowledge or consent of the spouse or intended spouse. There must be a fraudulent act on the part of the transferor and knowledge precludes fraud.

In the more recent *Anderson v. Anderson*, the parties were married for almost twenty years when the husband transferred a large portion of his estate into bank accounts held jointly with his children. The wife appears to have been aware of the transfers but there is indication that she gave her consent to the transfers. Affirming the trial court's summary judgment in favor of the surviving spouse, the Court stated "Appellants insist that the transfers may be set aside only upon a showing that the motive for the transaction was to defeat [the wife]'s marital right to a statutory share in the property. We are convinced that such a motive must be inferred from the circumstances of this case." [17] In the present case, while Joseph may have intended to prevent his soon-to-be wife from acquiring a right of dower in his property, there can be no inference of intent to defraud as she had knowledge of the conveyance.

Finally, this Court's most recent case is *Harris v. Rock*. This case involved post marriage transfers of personal property into joint accounts with the husband's seven children. The Court discussed some of the older cases referred to above. For example, the Court cited *Martin v. Martin* and stated "we held that a widow was entitled to dower in property that her intended husband disposed of shortly before their marriage in an attempt to defeat the claim by his intended wife to dower." [18] The *Harris* Court held that there was an implied limitation on funds in joint accounts and that the survivor of a joint account does not become the owner of the funds when the other joint account holder dies (as the statute provides) if the funds were placed in the account by a party who did not have legal authority to dispose of the funds. "[I]t has long been the law of Kentucky by virtue of KRS 392.020 that a husband has no legal right to dispose of more than one-half of his property with intent to defeat a dower claim by his widow." [19] The "intent to defeat dower" naturally implicates the requirements of fraud (intent being one) therefore consent is required to preclude claim of fraud if the transfer occurs after marriage. Also, "absent an agreement of the parties" refers to that consent. However, the Court of Appeals in this case mentions the dissent in *Harris* which noted that there was no evidence that the wife lacked knowledge or failed to give her consent.

There appears to be a dichotomy between the older and more recent cases, the latter recognizing broader rights in spouses with respect to the property of the other. *Harris v. Rock* is a notable example of what appears to be the more recent trend, so much so that Justice Leibson commented in dissent that "a married person cannot [now] dispose of his or her own money unless his spouse joins in the transaction." [20] Of our more recent cases, however, most involve the transfer of cash or its equivalent by married persons to persons other than their spouses, usually children by a previous union, creating the

---

17. *Anderson*, 583 S.W.2d at 505.

18. *Harris*, 799 S.W.2d at 11.

19. *Id.* at 12.

20. *Id.* at 15.

inference that fraud upon the spouse was intended. In this case, while the intention may have been the same, the transfer occurred prior to the marriage and with the knowledge of the intended spouse. In our view, this is a sufficient distinction to control the outcome. Accordingly, we reverse the Court of Appeals and remand to the trial court for entry of a judgment consistent herewith.

All concur.

