**Edward J. LADD, as Death Trustee of the Ladd Living Trust, dated June 23, 1997; and as Executor of the Estate of Jesse R. Ladd, Deceased, Appellant,**

v.

**Mary A. LADD, Appellee.**

**No. 2009–CA–001630–MR.**

Court of Appeals of Kentucky.

Oct. 1, 2010.

Robert William Goff (argued), Paducah, KY, for appellant.

Kerry D. Smith (argued), Paducah, KY, for appellee.

Before MOORE and WINE, Judges; HARRIS,[1] Senior Judge.

## OPINION

HARRIS, Senior Judge:

Edward J. Ladd, as death trustee of the Ladd Living Trust, and executor of the estate of Jesse R. Ladd, appeals from a McCracken Circuit Court declaratory judgment in favor of the appellee, Mary A. Ladd. After a careful review of the record and briefs and consideration of counsels' oral arguments, we affirm in part, reverse in part, and remand for further proceedings.

On June 23, 1997, four months prior to his marriage to Mary,[2] Jesse created the Ladd Living Trust (the "Trust"). On the same day, Jesse signed his Last Will and Testament (the "Will") and an Assignment and Nominee Agreement (the "Assignment Agreement").

The Trust document stated that Jesse was unmarried and had three children, Jesse J. Ladd, Edward J. Ladd, and David O. Ladd. The Trust further stated that Jesse was assigning all of his presently owned and after-acquired property to the Trust, and provided that upon Jesse's death, all of his assets would be distributed to his children, other than a 1994 Cadillac El Dorado Coupe, which would go to Mary. On the date that he signed the Trust, Jesse conveyed seven parcels of real estate, including his marital residence, from himself, individually, to the Trust. Jesse never expressly transferred or titled

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. We sometimes refer to the parties by their given names for the sake of clarity and with no disrespect intended.

his remaining assets, neither assets he presently owned nor assets that he subsequently acquired, to the Trust. No reason was given as to why he failed to do so.

Jesse and Mary were married in October 1997. Mary contributed property and bank accounts to the marriage, and Jesse and Mary titled their bank accounts either jointly or in Jesse's name, rather than in the name of the Trust. Moreover, Jesse and Mary paid their marital bills from joint bank accounts that they maintained throughout their marriage.

Thereafter, in August 2005, Jesse amended his Trust to provide that his primary residence, which he had previously deeded into the Trust, would be distributed to Mary upon Jesse's death. Jesse made no other amendments to the Trust.

Jesse died on March 6, 2008, and Edward was appointed executor of Jesse's estate. Edward took the position that all of Jesse's assets belonged to the Trust rather than the estate. As a result, Edward asserted that the assets should be distributed to him and his brothers as death beneficiaries of the Trust, other than the residence addressed in Jesse's only amendment to the Trust.

Mary never expressly relinquished her dower rights before or during the marriage and she filed a renunciation of the Will on May 29, 2008.[3] Additionally, Mary filed this action seeking a declaratory judgment concerning the Trust, stating that she did not contest the terms of the Trust, but sought a ruling as to whether certain assets belonged in Jesse's estate, where she would be a joint beneficiary, or

in the Trust, where Edward and his brothers would be the sole beneficiaries.

Mary moved for a declaratory judgment on May 21, 2009. Although it appears that a hearing was scheduled for June 9, 2009, no record of a hearing was provided to this Court, and the trial court did not state in its findings of fact that a hearing occurred. On June 23, 2009, the trial court issued findings of fact, conclusions of law, and a judgment in favor of Mary. This judgment became final pursuant to the trial court's order entered on August 10, 2009. Edward subsequently filed for a motion to alter, amend or vacate, which the trial court denied. This appeal followed.

## I. THE APPLICABLE STANDARD OF REVIEW

Edward argues that the correct standard of review is the standard applicable to summary judgments, while Mary argues that the correct standard of review is the "clearly erroneous" standard. Kentucky Rules of Civil Procedure (CR) 52.01 provides that "[i]n all actions tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Conclusions of law, however, are reviewed de novo. Baze v. Rees, 217 S.W.3d 207, 209 (Ky.2006).

Alternatively, summary judgment serves to end litigation before a trial when there is no issue of material fact and the moving party is entitled to summary judgment as a matter of law. CR 56.03. On a motion for summary judgment, the trial court

---

3. Pursuant to the law at the time that the parties were married, the parties' marriage revoked the Will under KRS 394.090 and, therefore, nothing would pour over into the Trust by virtue of the Will. Thus, Mary was technically entitled to a share of Jesse's non-

Trust assets under KRS 392.020. However, Mary elected to treat the Will as valid and instead renounced the Will and claimed a share of the non-Trust assets under KRS 392.080.

must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in its favor. *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* (citing *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985)). The party opposing summary judgment must present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest,* 807 S.W.2d at 482.

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, "an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001).

■ Edward argues that this Court should use the standard of review applicable to summary judgments because the trial court utilized the summary judgment standard in its findings of fact, conclusions of law, and judgment, and because no bench trial was ever conducted. Summary judgment may be granted in a declaratory judgment action. CR 56.01; *Schmidt v. Halpin,* 351 S.W.2d 57, 58 (Ky.1961). Pursuant to CR 56.01, "[a] party seeking to ... *obtain a declaratory judgment* may, at any time ... move with or without sup-porting affidavits for a summary judgment in his favor...." (Emphasis added). In cases where a summary judgment has been granted in a declaratory judgment action and no bench trial held, the standard of review for summary judgments is utilized. *Godman v. City of Fort Wright,* 234 S.W.3d 362, 368 (Ky.App.2007).

In this case, the trial court recognized that although Mary's motion was styled a "Motion for Declaratory Relief," it was procedurally a motion for summary judgment in the declaratory action. This recognition is evidenced by the trial court's recitation of the summary judgment standard in its findings of fact, conclusions of law, and judgment. Moreover, although Mary argues in her brief that she was seeking a declaration of law and not summary judgment, a Stipulation and Agreed Order, drafted by Mary's counsel and establishing the briefing schedule on Mary's "Motion for Declaratory Relief," identified the pending motion as a motion for summary judgment. Even more tellingly, the record does not reflect that a trial of any sort was held in the matter. We are persuaded that the judgment under review is a summary judgment; accordingly, we review it by analyzing the standard stated above, to wit, whether the trial court correctly found that there were no genuine issues of material fact and that the movant was entitled to judgment as a matter of law, with no deference to the trial court's decision.

## II. PROPERTY ALLEGEDLY TRANSFERRED TO THE TRUST AT THE TIME OF ITS CREATION

■ Edward argues that the trial court erred in determining that Jesse did not transfer all of his assets into the Trust, since the Trust documents indicated that Jesse intended for all of his property to be transferred into the Trust and that none

remain outside of the Trust. Mary contends that a written declaration of trust is insufficient, by itself, to create a revocable living trust in real property, and that Jesse was required to have expressly transferred the property to the Trust or to himself as trustee.

Edward argues that the language of the Trust document and the Assignment Agreement confirm that Jesse intended to transfer all of his property to the Trust. In Article Two, Section 1 of the Trust, Jesse provided:

> I hereby assign, convey, transfer and deliver to my Trustee all property set forth on Schedule "A," attached hereto, and made a part of my Trust Estate.

Schedule A includes the following property:

> Other than any property the transfer of which would cause taxable income or violate any agreements restricting transfer or ownership, any and all properties of all kinds, whether presently owned or hereafter acquired including, without limitation, the following . . . .

Schedule A also contains a list of general items, which includes mutual and money market funds, securities, stocks, and accounts held at brokerage firms, and a list of specific items of property, including life insurance policies and all real property located in Paducah, McCracken County, Kentucky.

> The Trust document further states that: All assets titled in the name of my Trust or in the name of my Trustee, but not listed on Schedule "A," shall be considered a part of my Trust Estate as if they had been set forth on the attached Schedule.

Section 5 of the Trust document addresses "Property Held as Nominee," stating:

> For administrative convenience it is contemplated that certain assets may be added to my Trust Estate from time to time with the possession and control thereof retained by or redelivered to me. Notwithstanding such control or redelivery, such assets shall be assets of my Trust Estate and held by me as the nominee of my Trustee.

The Assignment Agreement executed simultaneously with the Trust document states:

> Nominee intends to have transferred all property owned by Nominee to the Trust, including but not limited to the property identified on Schedule "A," whether real or personal, tangible or intangible . . . .

The Assignment Agreement further provides "Nominee intends that any Property presently owned or acquired hereafter by any means shall be owned by the Owner." Furthermore, the Assignment Agreement provides:

> The parties expressly acknowledge that Nominee is holding title to the Property as nominee for Owner(s) to the full extent of the interest therein. Nominee expressly acknowledges that Nominee has no interest whatsoever in the property and agrees that upon demand Nominee will convey possession of the property to the Owner(s).

Alternatively, Mary points to language contained on the first page before the body of the Trust document,[4] which states:

**IMPORTANT REMINDER**

> Your Living Trust will only control property which has been transferred into the name of the Trust. If property is not in the name of your Trust, it may be subject to . . . probate court proceed-

---

4. The Court is unclear why the page containing this language was omitted from the Trust document attached in the appendix to Edward's brief.

ings and may not pass according to your Estate Plan....

Mary emphasizes the fact that Jesse did not transfer all of his property into the Trust, even though the Trust document contained the reminder, and even though Jesse did transfer some of his property to the Trust on the day that he signed the Trust documents.

Mary also points to the fact that Jesse received a subsequent reminder from his attorney to transfer any property that he wanted to become a part of the Trust. Nearly contemporaneously with the Trust's creation, Jesse's attorney gave him a letter instructing him to follow through with the transfer of his personal assets into the Trust, stating: "As you know, your Living Trust will only protect those assets that have had title formally changed to the [T]rust name."

Notwithstanding Mary's assertions, no authority appears to require that a settlor, who also names himself as trustee of a revocable living trust, must convey his property to the trust by separate instrument. To the contrary, all of the authorities support the conclusion that a declaration by the settlor that he holds the property in trust for another, alone, is sufficient.

■ Kentucky cases have specifically stated that one who is both the settlor and trustee of a trust need not transfer the legal title of the trust corpus. Specifically:

> When a settlor is possessed of the legal title to the subject-matter of the settlement, he may create a valid trust thereof, either by a declaration that he holds the property in trust, or by a transfer of the legal title to the property to a third party upon certain trusts.... *If he makes himself the trustee, no transfer of the subject-matter is necessary.*

*Reynolds v. Thompson,* 161 Ky. 772, 171 S.W. 379, 383 (1914) (emphasis added). Further, "[o]ne voluntarily and without valuable consideration *can completely divest himself of legal ownership of property without an actual transfer of the legal title* by creating a valid trust and constituting himself as trustee for the beneficial owner." *DeLeuil's Ex'rs v. DeLeuil,* 255 Ky. 406, 74 S.W.2d 474, 476 (1934) (emphasis added).

A review of pertinent sections of the Restatement (Second) of Trusts further illustrates our point.[5] The Restatement echoes *Reynolds* by providing that a trust may be created by "(a) a declaration by the owner of property that he holds it as trustee for another person; or (b) a transfer *inter vivos* by the owner of property to another person as trustee for the transferor or for a third person...." Restatement (Second) of Trusts § 17 (1959). The comment to clause (a) states: "If the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property." *Id.*

To the same effect, Bogert in his treatise on trusts and trustees observes:

> It is sometimes stated that the transfer by the settlor of a legal title to the trustee is an essential to the creation of an express trust. The statement is inaccurate in one respect. Obviously, if the trust is to be created by declaration there is no real transfer of any property interest to a trustee. The settlor holds a property interest before the trust declaration, and after the declaration he holds a bare legal interest in the same

---

5. Kentucky courts have applied other sections of the Restatement (Second) of Trusts in *Compton v. Compton,* 435 S.W.2d 76, 78 (Ky. 1968), and *Hurst v. First Kentucky Trust Co.,* 560 S.W.2d 819, 821 (Ky.1978), indicating a willingness to apply the Restatement (Second) in this area of the law.

property interest with the equitable or beneficial interest in the beneficiary. No new property interest has passed to the trustee. The settlor has merely remained the owner of part of what he formerly owned.

George Gleason Bogert and George Taylor Bogert, *The Law of Trusts and Trustees* § 141 (2d ed., West 1979).

We conclude that the trial court erred to the extent that it based its determination of whether an asset belonged to the Trust solely on whether or not Jesse had transferred legal title to the Trust. Significant issues of fact exist to preclude summary judgment on the issue of what assets were transferred to the Trust at the time of its creation.

## III. PROPERTY ACQUIRED AFTER CREATION OF THE TRUST

■ Property acquired after the creation of the Trust should not be considered as part of the Trust unless Jesse reaffirmed his intent to make it such. When a trust is created, the trust property's identity must be sufficiently definite. The Court of Appeals has explained that "[t]he property must then have been in existence *and its identity definite* so that it could be ascertained as to just what was set aside." *DeLeuil*, 74 S.W.2d at 477 (emphasis added). Where one declares a trust in property to be later acquired, and upon or after acquiring the property confirms his prior manifested intent to create the trust or repeatedly manifests such an intent, a trust is then created in the property. 3 A.L.R.3d 1416 § 11[a]–11[b] (1965); Restatement (Second) of Trusts § 86 cmt. c (1959). Although no Kentucky law on the subject has been cited to us or found by our own efforts, the position of the Restatement concerning whether the settlor's mere silence at the time of the acquisition of the property establishes his continuing

intention to have the property be property of the trust is that resolution of the question depends upon the circumstances of the particular case. Restatement (Second) of Trusts § 26 (1959) and § 86 cmt. c (1959).

For illustration, and without limitation, the inclusion of both Jesse's and Mary's name on any after-acquired property is evidence of Jesse's intent that the property not be included in the Trust as after-acquired property. We conclude that significant issues of material fact exist with respect to property allegedly acquired after the Trust was created, and summary judgment was not warranted concerning such property.

## IV. MARY'S DOWER RIGHTS

■ Significant factual issues also exist concerning the extent to which Mary's dower rights affected the determination of which assets were Trust assets. These issues involve Mary's knowledge of the terms of the Trust prior to her marriage to Jesse, and whether she consented to these terms, which would bar any claim of fraud on dower. *See Mathias v. Martin*, 87 S.W.3d 859, 861–62 (Ky.2002) (reasoning that "[i]gnorance of certain facts, known to the other party, but concealed, or misrepresented, is an essential ingredient to constitute fraud. If all the facts are known, there can be no deception; and if there be no imposition or deception, there cannot be any fraud").

Material factual issues also exist regarding Jesse's intent in transferring the property to the Trust, and whether or not he intended to defraud Mary of her dower rights. *See Harris v. Rock*, 799 S.W.2d 10 (Ky.1990); *Rowe v. Ratliff*, 268 Ky. 217, 104 S.W.2d 437 (1937). Summary judgment was inappropriate on these issues.

## V. TRANSFER OF ASSETS OUT OF THE TRUST

■ Edward argues that the circuit court erred in determining that no issue of material fact existed with respect to whether certain assets were acquired with proceeds of Trust assets. We disagree. In Article Two, Section 3 of the Trust document, Jesse provided that:

> All property transferred by me into my Trust shall retain its character. All such property transferred, and income thereon or withdrawals thereof, shall be my Trust Estate.

Edward claims that he was able to trace proceeds from Trust assets into certain brokerage accounts that are listed on the inventory of the estate. Therefore, Edward argues that because Jesse intended for the proceeds of Trust assets to retain their character as Trust assets, an issue of material fact existed with respect to Edward's ability to trace the proceeds of Trust assets.

However, the Trust document itself permitted Jesse to utilize the Trust corpus during his lifetime for property over which he still exercised possession and control. The Trust document states that "[f]or administrative convenience it is contemplated that certain assets may be added to my Trust Estate from time to time *with the possession and control thereof retained by me.*" The document further provides that:

> I may receive directly and devote to my own use and benefit any dividends, interest, income, or proceeds or distributions from or upon such assets and neither I nor my Trustee shall have any duty of accounting to the other or to any other person with regard thereto.

Moreover, "[a]ny sale, exchange, or other transfer of such assets by me shall constitute a withdrawal of such assets from the Trust Estate and my Trustee shall have no further interest therein."

Here, Jesse maintained possession and control over all of the property prior to his death. Therefore, he was free to transfer the assets, and after such withdrawal of the assets, they were no longer a part of the Trust. The trial court was correct in its finding that there was no issue of material fact concerning this issue, and summary judgment was proper.

## VI. THE *IN TERROREM* CLAUSE

■ Finally, Edward argues that Mary violated the Trust's no-contest clause because her purpose was to invalidate or ignore Jesse's intent as expressed through the terms of the Trust. We disagree. Generally, no-contest clauses are "construed strictly." *Hurley v. Blankenship,* 267 S.W.2d 99, 100 (Ky.1954). Under Kentucky law, where one asks for a legal interpretation of the effect of a trust document, then he or she is not challenging the trust terms but instead is seeking a construction of those terms, and does not breach the no-contest clause. *Dravo v. Liberty Nat'l Bank & Trust Co.,* 267 S.W.2d 95, 99 (Ky.1954).

In this case, Mary has pled and argued that she is not contesting the validity of the Trust, and the record confirms this to be true. Instead, she is seeking a determination that the assets that Jesse did not transfer into the Trust, or which he eventually withdrew from the Trust, be declared to be non-Trust assets which, pursuant to *Dravo,* does not implicate the no-contest clause. Therefore, the trial court did not err in granting summary judgment on this issue.

Accordingly, we affirm the McCracken Circuit Court's conclusion that there was no issue of material fact with respect to whether certain assets were acquired with proceeds of Trust assets. Further, we affirm the trial court's conclusion that

Mary did not violate the terms of the Trust's no-contest clause. All other portions of the trial court's judgment are reversed and remanded for further proceedings.

ALL CONCUR.