**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 12, 2012**

# In the Court of Appeals of Georgia

A12A0393. ROSE et al. v. WALDRIP.                              AD-018

ADAMS, Judge.

Linda Rose ("Linda") and Joy Garcia ("Joy") appeal the trial court's order of declaratory judgment in an action filed by "Colleen Waldrip ['Colleen'] as Administrator with Will Annexed of the Estate of Lee R. Waldrip ['Waldrip']." In that order, the trial court enforced the "after-acquired property" clauses contained in a "Revocable Living Trust" agreement (the "Trust Agreement") establishing the "Lee R. Waldrip Living Trust Dated April 29, 2002" (the "Trust") and in its contemporaneous Comprehensive Transfer Document (the "CTD").[1] The trial court

---

[1] This Court has jurisdiction in this case because "the sole issue presented on appeal is how to interpret a specific provision of a legal document—the ["after acquired property" provision in Waldrip's] trust," and "[t]hat is a straightforward legal question, one that does not require 'any analysis that could be termed an evaluation of equitable considerations.'" (Citations omitted.) *Durham v. Durham*, __

found that the language in these clauses alone was sufficient to convey Waldrip's entire estate into the Trust. We disagree for the reasons set forth below.

Lee R. Waldrip, who died on March 10, 2008, was Linda's father and Joy's grandfather. Colleen was his widow but apparently is not otherwise related to Linda and Joy. Colleen was named the primary beneficiary of the Trust as amended. Although earlier versions of the Trust also gave Linda an income of $1,000 per month per life, a second amendment to the Trust dated January 10, 2005, eliminated that provision and gave Linda a one time payment of $1,000. Linda and Joy, however, were named beneficiaries of a will Waldrip executed on January 1, 2008 (the "Will"), which provided for the funding of a trust to furnish Linda with an annual lifetime annuity (the "Linda Trust") and also excused certain indebtedness Joy owed her grandfather.

At issue is in this case is whether the Trust Agreement and the supporting documents that Waldrip executed on April 29, 2002 , six years prior to the Will, had the effect of placing all of Waldrip's property in Trust and removing it from his estate. The Trust Agreement created the Trust and named Waldrip as the trustee and primary beneficiary. In executing the Trust Agreement, Waldrip undertook "to

Ga. __ 2012 WL 2218728, 4 (Case No. S12A0537, decided June 18, 2012).

execute and deliver all deeds, assignments, bills of sale, written instructions and other legal documents necessary to convey and register all of my assets that I choose to place in trust under this trust . . . ." The agreement indicates that Waldrip was transferring to the Trust his assets evidenced by titles or deeds as contained in an attached Schedule A. That schedule lists "all bank accounts, all stocks, all bonds, all accounts receivable, all business assets, all real estate, all motor vehicles, all personal property, and all assets of any kind and wherever located." The schedule notes that this list was illustrative only and should "in no way be construed to limit the number or amount of assets held by this living trust."

The Trust Agreement also indicated that Waldrip was transferring the following assets to the Trust:

> all assets not requiring titles or deeds, including but not limited to my furniture, wearing apparel, and personal possessions. Additionally, [Waldrip was then] holding and will hold, solely and exclusively for and on behalf of such trust, the following: any and all properties of all kinds, whether presently owned *or hereafter acquired* including, without limitation: bank accounts, certificates of deposit, mutual and money market funds of all kinds, securities, agency and custody accounts, notes and real estate wherever located.

(Emphasis supplied.) The Trust Agreement reiterated that "[a]ll such property is hereby transferred to and the same shall be owned by such trust" and further provided that

> [t]his declaration shall apply *even though record ownership or title*, in some instances, *may, presently or in the future, be registered in my individual name, in which event such record ownership shall hereafter be deemed held in trust* even though such trusteeship remains undisclosed.

(Emphasis supplied.)

Contemporaneously with the Trust agreement, Waldrip also executed the CTD, which contained similar language transferring Waldrip's assets to the Trust, whether currently owned or later acquired:

> The undersigned hereby declares that solely as trustee of and for the benefit of the [Trust] . . . and under the provisions of the [Trust Agreement], the undersigned is now holding and will hold, solely and exclusively for and in behalf of such trust, the following: *any and all properties of all kinds, whether presently owned or hereafter acquired . . . including*, without limitation . . . : bank accounts, certificates of deposit, mutual and money market funds of all kinds, securities, agency and custody accounts, notes, real estate wherever located . . . jewelry, antiques, and *any and all other assets wherever located*.

(Emphasis supplied.) The CTD also contains the same language found in the Trust Agreement providing that Waldrip's declaration applies even if the assets are held in his name individually, "in which event such record ownership shall hereafter be deemed to be held in trust even though such trusteeship remains undisclosed."

The same day, Waldrip also executed a Bill of Sale granting to himself as trustee his interest "in all tangible personal property," and defining such property to include, "without limitation, [] such items as articles of personal property and household use which [Waldrip] presently owns *or hereafter acquires* (*regardless of the means by which acquired or the record title in which held*)" and providing an illustrative list, without limitation, of such personal property.

Colleen subsequently filed this declaratory judgment action to ascertain what assets, if any, remained in Waldrip's estate in light of the broad after-acquired property language in the Trust documents. Linda and Joy answered and counterclaimed to assert their rights under the Will, contending that the Waldrip estate had sufficient assets to fund Linda's trust and seeking an accounting from Colleen. After establishing the Trust, Waldrip apparently executed the necessary paperwork to transfer certain property into the Trust, but Linda and Joy allege that at

5

the time of his death, not all of his property had been so transferred, and they argue that this property should have been used to fund the bequests in the Will.

During the course of the litigation, the trial court issued an order finding that the parties had agreed during an October 20, 2010 motion hearing to submit the matter to a bench trial pursuant to OCGA § 9-11-39. The trial court found that the parties had also agreed to present evidence and argument to the court through briefs and affidavits. The trial court concluded that only one issue remained for its consideration:

> The sole issue for decision by the Court is whether that certain Comprehensive Transfer Document (the "CTD"), as amended, was legally effective and operated to vest in the Trust all properties acquired by Lee R. Waldrip acquired after the execution of the CTD, regardless of the names by which Lee R. Waldrip acquired the properties. In a later order, the trial court stated that the parties, in fact, had consented and stipulated "that the sole decision was whether a certain comprehensive transfer document executed by [] Waldrip on April 29, 2002 was legally effective and operated to vest in the [Trust] all of the properties acquired by [] Waldrip after the execution thereof."

After considering the parties' arguments and evidence, the trial court found (1) that Waldrip intended that "all property acquired by him after the creation of the trust

6

[] become a part of the trust;" and (2) that the after-acquired property provisions of the Trust documents were enforceable under Georgia law.

1. "The trial court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (Citations and punctuation omitted.) *Hong Investments v. Sarsfield*, 312 Ga. App. 82 (717 SE2d 679) (2011). Applying this standard, we must uphold the trial court's determination that Waldrip intended to transfer all his property to the Trust if there is any evidence to support it, but we review de novo the trial court's conclusion that the Trust's after-acquired property provisions effectively fulfilled this intention under the applicable law.

(a) *Intent* – "Broadly speaking, the terms of a trust are whatever the settlor[2] intended them to be at the time of the creation of the trust, so long as those terms are permitted by law." (Citation omitted.) *Heiman v. Mayfield*, 300 Ga. App. 879, 882 (1) (686 SE2d 284) (2009). As with any contract, we look first to the language of the Trust documents themselves to determine Waldrip's intent. See generally *Tadlock v.*

---

[2] "'Settlor' means the person who creates the trust, including a testator in the case of a testamentary trust." OCGA § 53-12-2 (11).

7

*Tadlock*, 290 Ga. App. 568, 573 (2) (660 SE2d 430) (2008) (courts look first to the language of agreement to determine parties' intent; if the language is plain and unambiguous and the intent is clear, the court need look no further.). As quoted above, each of the documents executed by Waldrip on April 29, 2002 contemplates that Waldrip's after-acquired property will become a part of the Trust. Although as settlor, Waldrip committed to complete all necessary paperwork to transfer his assets into the Trust, the Trust documents each provides that the assets are deemed transferred to the Trust even if they are held in Waldrip's name individually. And though the provisions of the Will are in conflict with the Trust, we must presume that when Waldrip executed the Will he was aware of the contents of the Trust documents he executed six years earlier.[3] See *Brinson v. Martin,* 220 Ga. App. 638, 639 (1) (469 SE2d 537) (1996) (party who signs a contract or agreement is presumed to know its contents.) We conclude, therefore, that the record contains sufficient evidence to support the trial court's finding that Waldrip intended at the time he executed the Trust documents that the Trust would encompass his entire estate, including any after-acquired property.

---

[3] Although the attorney who drafted the Will submitted an affidavit stating that Waldrip never told him about the Trust, that evidence was insufficient to overcome this presumption.

(b) *After-Acquired Property Clauses* - We must determine, therefore, whether the after-acquired property clauses in the Trust documents were enforceable under the applicable law to effect Waldrip's intent.

(i) *Applicable law* – The parties point us to no Georgia law specifically addressing this issue of an after-acquired property clause in a trust, and we could find none. Linda and Joy contend, however, that the trial court erred in determining that the clauses in the Trust documents were effective in and of themselves to transfer all of Waldrip's later-acquired assets into the Trust because, in some cases, Waldrip failed to follow Georgia's established legal requirements to effect the transfer of such property. In support of this argument, Linda and Joy rely upon OCGA § 53-12-25 which provides that the "[t]ransfer of property to a trust shall require a transfer of legal title to the trustee." OCGA § 53-12-25 (a). And "[f]or any interest in real property to become trust property in a trust of which any transferor is a trustee, the instrument of conveyance shall additionally be recorded in the appropriate real property records." OCGA § 53-12-25 (b).

That statute, however, was enacted as part of the Revised Georgia Trust Code of 2010 [the "Revised Code"][4] and was not a part of the prior code. Thus, this

---

[4] OCGA § 53-12-1 (a), et seq.

9

provision did not go into effect until July 1, 2010, 2010 Ga. L. 506, § 1, more than eight years after Waldrip executed the Trust documents and more than one year after he died. Although the Revised Code expressly applies to any trust regardless of the date such trust was created, the code establishes two exceptions: (1) "to the extent [application of the Revised Code] would impair vested rights" and (2) "except as otherwise provided by law." OCGA § 53–12–1 (b). The Georgia Constitution also "forbids passage of retroactive laws which injuriously affect the vested rights of citizens." (Citations omitted.) *Recycle & Recover v. Georgia Bd. of Natural Resources*, 266 Ga. 253, 254 (2) (466 SE2d 197) (1996); 1981 Ga. Const. Art. I, Sec. I, Par. X. See also *Woodruff v. Trust Co. of Ga.,* 233 Ga. 135, 140 (2) (210 SE2d 321) (1974) (a statute is impermissibly retroactive when it "creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights.") (Citation omitted.).

An interest becomes vested "when there is an immediate right of enjoyment or a present fixed right of future enjoyment." (Citations omitted.) *Woodruff v. Trust Co. of Ga.,* 233 Ga. at 141 (2). See also *Recycle & Recover v. Georgia Bd. of Natural Resources*, 266 Ga. at 254 (2) ("'vested rights' means 'interests which it is proper for (the) state to recognize and protect and of which (the) individual cannot be deprived

arbitrarily without injustice.'") (Citations and punctuation omitted.) We conclude that Colleen's rights were already vested when the Revised Code was enacted because under the terms of the amended Trust Agreement, her rights to the Trust assets took effect upon Waldrip's death in 2008. Accordingly, any new obligation imposed by the Revised Code that would impair her right to possession cannot be applied retroactively, and OCGA § 53-12-25 would have no application to the Trust if it, in fact, creates such a new obligation.

We must determine, therefore, whether prior to the enactment of the Revised Code, the law required that assets be formally transferred to the trustee or whether the Trust documents alone would be sufficient to bring Waldrip's property into the Trust. Although we could find no Georgia authority on point, the case of *Ladd v. Ladd*, 323 S.W.3d 772 (Ky. App. 2010) is instructive. There, the Kentucky Court of Appeals, considered the same issue now before us and determined that a declaration of trust is enough in and of itself to effect a transfer where, as here, the settlor names himself as trustee:

> No authority appears to require that a settlor, who also names himself as trustee of a revocable living trust, must convey his property to the trust by separate instrument. To the contrary, all of the authorities support the

11

conclusion that a declaration by the settlor that he holds the property in trust for another, alone, is sufficient.

*Ladd v. Ladd*, 323 S.W.3d at 778 (II).

Although the court relied, in part, upon Kentucky law, it noted that the Restatement (Second) of Trusts was in accord. Indeed, Section 17 of the Restatement (Second) provides that a trust may be created by various means including by "a declaration by the owner of property that he holds it as trustee for another person . . . ." Restatement (Second) of Trusts § 17 (a) (1959). And the comments provide that "[i]f the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property." Id. at cmt. a. Further instruction may be found in the comments to Section 10 of the Restatement (Third) of Trusts (2003), which clarifies that the legal formalities for transfer generally do not apply in such a case:

> [T]he law [does not] ordinarily require acknowledgment or recordation, or other formal change in ownership records or documents of title, for the effective creation of the trust. Even additional statutory formalities, such as those applicable to transfers of land requiring that a document be sealed, attested, acknowledged, or recorded, ordinarily are not essential to effect a valid transfer as between transferor and transferee.

12

Restatement (Third) of Trusts § 10 cmt. c (2003).[5] As the *Ladd* court noted, the Bogert treatise on trusts provides the reasoning behind this principle, explaining that formal transfer is not required because the settlor already owns the property and merely takes a lesser interest in it when he makes his trust declaration:

> Obviously, if [a] trust is to be created by declaration there is no real transfer of any property interest to a trustee. The settlor holds a property interest before the trust declaration, and after the declaration he holds a bare legal interest in the same property interest with the equitable or beneficial interest in the beneficiary. No new property interest has passed to the trustee. The settlor has merely remained the owner of part of what he formerly owned. George Gleason Bogert and George Taylor Bogert, *The Law of Trusts and Trustees* § 141 (2d ed., West 1979).[6]

*Ladd v. Ladd*, 323 S.W.3d at 778 -779 (II).

---

[5] Nevertheless, the Restatement comments note that a settlor may choose "for practical reasons" to follow the formalities for transfer to perfect the rights as to third parties. And "[a]s long as the trust is effectively established, however . . . these steps may be taken later by the settlor or may be accomplished, following the settlor's death or incompetency, by court order or other procedures appropriate to the circumstances and applicable law or practice." (Emphasis supplied.) Id.

[6] Georgia courts repeatedly rely upon the various Restatements of Trusts and the various editions of Bogert's treatise in addressing trust issues in this state. See, e. g. *McPherson v. McPherson*, 307 Ga. App. 548 (705 SE2d 314) (2011) (Restatement (Third)); *Citizens and Southern Nat. Bank v. Haskins*, 254 Ga. 131(327 SE2d 192) (1985) (Restatement (Second) and Bogert).

13

We conclude, therefore, that before enactment of the Revised Code, a settlor who declared a trust naming himself as trustee was not required to separately and formally transfer the designated property into the trust. Because OCGA § 53-12-25 requires formal transfer of trust property, while the prior law did not, we conclude that its retroactive application in this case would impermissibly impair Colleen's property rights in the Trust; therefore, we apply the law as it existed prior to the Revised Code.

(ii) *After-acquired property* – Turning next to the issue of whether Waldrip's after-acquired assets also became Trust property under the language of the Trust documents, we conclude that the Trust documents alone are insufficient to bring such assets within the Trust.

For guidance on this issue, we again turn to the Restatement of Trusts, which provides that "[a]n expectation or hope of receiving property in the future cannot be held in trust." Restatement (Second) of Trusts § 86.[7] The comments to § 86 explain

---

[7] Cf. *Meeks v. Kirkland,* 228 Ga. 607 (1) (187 SE2d 296) (1972) (mere expectation of interest in living parent's land not a part of husband's estate out of which an allowance of alimony could be made); *Land v. State,*103 Ga. App. 496, 497 (1) (119 SE2d 809) (1961) (legal interest and not mere claim or expectation of interest required to support allegation of ownership of property wrongfully converted in charge of larceny).

that "[i]f a person . . . purports to declare himself presently trustee of property [that he hopes to acquire in the future] . . . , no trust arises even when he acquires the property in the absence of a manifestation of intention at that time." Id. at cmt. c. Section 41 of the Restatement (Third) of Trusts also provides that "[a]n expectation or hope of receiving property in the future, *or an interest that has not come into existence* or has ceased to exist, cannot be held in trust."(Emphasis supplied). The comments to that section acknowledge that "[a] person can make a promise to create a trust of an interest in [property not yet owned] should it thereafter be acquired, but such an agreement is not binding unless the requirements of the law of contracts are satisfied." Restatement (Third) of Trusts, § 41, cmt. b. Thus, where a settlor receives consideration for his declaration of trust on a property not yet owned, "the purported declaration . . . is treated as a contract to create a trust even though it is worded as a present declaration. . . ." Id. at cmt. c. But without such consideration, no enforceable promise arises, and the Court must examine whether the settlor later confirmed his prior intent to hold such property in trust or otherwise manifested such an intent. See 3 A.L.R.3d 1416 § 11 [a]–11 [b] (1965). Where a settlor formally conveys his later acquired property to the trust, his intent is manifest, but for those properties where no such formal transfer occurred, we conclude that a court must explore the

15

circumstances surrounding each such property to determine whether the settlor intended it to become part of the Trust:

> [T]he position of the Restatement concerning whether the settlor's mere silence at the time of the acquisition of the property establishes his continuing intention to have the property be property of the trust is that resolution of the question depends upon the circumstances of the particular case. Restatement (Second) of Trusts § 26 (1959) and § 86 cmt. c (1959).

*Ladd v. Ladd*, 323 S.W.3d at 779 (III).

Accordingly, we reverse the trial court's declaratory judgment to the extent that it found that all of Waldrip's later acquired assets became a part of the Trust based upon the after-acquired property clauses alone, and we remand the matter to the trial court for further proceedings in accordance with this opinion. We also reverse the trial court's denial of the motion to compel discovery filed by Linda and Joy and remand for further consideration of the motion in light of this opinion.

2. Linda and Joy also argue that the trial court erred in finding that they stipulated that the only issue that remained for the trial court's consideration was the validity of the after-acquired property clauses. They assert that they never agreed to limit the trial to this single issue. Linda submitted an affidavit stating that she did not

16

attend the October 20 hearing because she believed it would address only an outstanding discovery motion and that she did not authorize her attorneys to waive any issues for trial. But under USCR 4.12, "[a]ttorneys of record have apparent authority to enter into agreements on behalf of their clients in civil actions." And where no notice has been provided indicating that an attorney's authority has been terminated, or otherwise limited, others may rely upon the attorneys' apparent authority to bind the client. See *Speed v. Muhanna*, 274 Ga. App. 899, 904 (1) (619 SE2d 324) (2005). No evidence exists that Linda and Joy ever provided notice limiting their attorney's authority. And although their attorneys submitted affidavits asserting that they did not agree to waive or limit any issues at the October 20 hearing, "in the absence of a transcript of the [hearing], we must presume that the evidence supports the trial court's findings." *Blue v. Blue,* 279 Ga. 550 (1) (615 SE2d 540) (2005). See also *Terry v. Burley*, 312 Ga. App. 860, 860 (1) (720 SE2d 309) (2011).

*Judgment affirmed in part and reversed and remanded in part. Barnes, P. J., concurs. McFadden, J., concurs fully in Division 1 and specially in Division 2.*

17

# In the Court of Appeals of Georgia

A12A0393. ROSE et al. v. WALDRIP.

McFADDEN, Judge, concurring specially.

I concur fully in Division 1. I concur in judgment only in Division 2 and note that the matter now returns to the trial court, who will have the authority to revisit the stipulations and their significance in light of the further proceedings required on remand.

18