*Judgment reversed and case remanded. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

Jesus Garibay, *pro se.*

*Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

## S16A0857. MURRAY v. MURRAY.
(791 SE2d 816)

HUNSTEIN, Justice.

We granted this interlocutory appeal to address whether the trial court erred when it denied enforcement of the parties' post-nuptial agreement. Based on the record before this Court, the trial court properly found that the post-nuptial agreement was unenforceable, and we affirm the judgment below.

In October 2014, Brenda Kay Murray (Wife) initiated divorce proceedings against Gary Wilbur Murray (Husband). The parties, who had been married for approximately 34 years, began discussing the prospect of divorce several months prior. Though Husband indicated his desire to divorce, Wife wanted to save the marriage and, to that end, wrote Husband a letter of apology renouncing her rights in the marital estate. Wife claims that she wrote this letter at Husband's behest and that its terms reflected what Husband wanted it to say. Husband subsequently engaged counsel to draw up a formal post-nuptial agreement (the "Agreement"), providing for the disposition of the couple's marital property upon dissolution of the marriage by divorce or death, which was favorable toward Husband. The parties signed the Agreement on June 5, 2014.

Several months after the Agreement was executed, and following unfruitful attempts at marriage counseling, Wife filed for divorce in October 2014. Husband moved to enforce the Agreement, and Wife objected, claiming the Agreement was the product of fraud. Specifically, Wife claimed that Husband had induced her to sign the Agreement with the promise that he would tear it up as soon as she signed it, making her believe her execution of the Agreement was merely a symbolic gesture of love and devotion that would have no practical

effect. Husband, on the other hand, contended that he merely promised to destroy the Agreement if and when he "was comfortable they were in love again."

Following a hearing, the trial court denied Husband's motion, finding the Agreement to be unenforceable. In its order denying Husband's motion, the trial court credited Wife's testimony in its entirety and concluded in relevant part:

> . . . a marriage, especially one that had been in existence for one day short of thirty-four years when the document was executed, is a special context. Trust between spouses is built up, and after the length of time the parties were together, a few rocky patches would not be expected to eliminate it. Parties in other contexts do not enter into contracts with the expectation they will be torn up in the future. Here, both parties say their agreement was subject to being torn up in the future; they differ only on when that might occur. They hoped with all their hearts to love each other after it was made. . . . What occurred here was a mutual expression of love and trust. Viewed in that light, a promise not to enforce an agreement is not as implausible as it would be on nearly all other occasions. In most situations, contracts can be drafted to preclude introduction of evidence of oral representations which are inconsistent with the terms of the written agreement. Because of the unique, quasi-fiduciary relationship marriages create, that principle is inapplicable here. The legal effect of [Husband's] representation that the parties' agreement would not be enforced is that is [sic] cannot be enforced.

Husband appeals the trial court's order.

In deciding whether to enforce a post-nuptial agreement, the trial court "essentially sits in equity and has discretion to 'approve the agreement in whole or in part, or refuse to approve it as a whole.'" (Citation and punctuation omitted). *Alexander v. Alexander*, 279 Ga. 116, 117-118 (610 SE2d 48) (2005). Three factors to consider in deciding the validity of a post-nuptial agreement are:

> (1) [W]as the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) [I]s the agreement unconscionable? (3) Have the facts and circumstances changed since the agree-

ment was executed, so as to make its enforcement unfair and unreasonable?

*Scherer v. Scherer*, 249 Ga. 635, 641 (3) (292 SE2d 662) (1982). We evaluate a trial court's ruling on such matters pursuant to the abuse of discretion standard. See *Lawrence v. Lawrence*, 286 Ga. 309, 309-310 (1) (687 SE2d 421) (2009). Under this standard, "we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." Id. at 310. Further, this Court "gives due deference to the opportunity of the trial court to judge the credibility of the witnesses," in reviewing the trial court's factual findings. (Citation and punctuation omitted.) *Autrey v. Autrey*, 288 Ga. 283, 284-285 (2) (702 SE2d 878) (2010).

While we question whether there was a meeting of the minds to create an enforceable post-nuptial agreement in this case, the evidence supports the trial court's conclusion that the Agreement was unenforceable because Husband's promise to tear up the Agreement amounted to fraud. Georgia law defines fraud as an action which "may be consummated by signs or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another." OCGA § 23-2-56. While "the mere failure to comply with a promise to perform an act in the future is not fraud in a legal sense . . . when the failure to perform the promised act is coupled with the present intention not to perform, fraud, in the legal sense, is present." *Dye v. Dye*, 231 Ga. 533, 534 (202 SE2d 418) (1973). Moreover, "spouses enjoy a confidential relationship entitling one to repose confidence and trust in the other." *Mallen v. Mallen*, 280 Ga. 43, 44 (1) (a) (622 SE2d 812) (2005). See also OCGA § 23-2-58; *Beller v. Tilbrook*, 275 Ga. 762 (3) (571 SE2d 735) (2002).

The trial court's finding that Husband's representation to Wife made the Agreement unenforceable is supported by the record. Wife, whom the trial court found credible, testified that she signed the Agreement because Husband represented to her that, if she signed the Agreement, he would understand that she loved him, he would not divorce her, and he would tear up the Agreement. The trial court determined that, based on Wife's testimony, Husband procured Wife's signature on the Agreement under the pretense that the Agreement would never be enforced and, in fact, that the Agreement would be destroyed. In light of the confidential relationship between spouses, Wife was entitled to trust Husband's representations. The record shows, however, that while Husband did not file for divorce, he did not destroy the Agreement as he had promised; instead, Husband retained the document for nearly six months, during which time the parties

were attempting to reconcile their marriage, and produced it for enforcement when Wife finally sought a divorce. This evidence — the prolonged retention of the Agreement that Husband promised to destroy as soon as Wife signed it, coupled with the subsequent attempt to enforce it — though slight, is sufficient to establish the existence of fraud, especially here, in light of the relationship between the parties and the nature of the Agreement. OCGA § 23-2-57 ("Fraud may not be presumed but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence."). Cf. *Horton v. Johnson*, 192 Ga. 338, 346-347 (1) (15 SE2d 605) (1941) (recognizing that "slight evidence" of fraud is sufficient to establish its existence, particularly involving family transactions). Based on the foregoing, the trial court did not err in finding the parties' post-nuptial Agreement to be unenforceable.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*Howard C. Kaufold, Jr.*, for appellant.

*Smith & Phelps, Robert B. Smith; Earl M. McRae, Jr.*, for appellee.