301 Ga. 622
FINAL COPY

S17F0593.  GIBSON v. GIBSON et al.

PETERSON, Justice.

Alina Gibson (Wife) appeals from the trial court's order granting her requested divorce from Stewart Gibson (Husband).  She argues that the trial court erred by excluding from the marital estate approximately $3.2 million in assets that Husband previously had placed into two trusts.  Wife argues that exclusion of the trust assets was erroneous because (1) property placed in trust by one spouse without the other's knowledge and consent remains marital property; (2) Husband's transfer of assets into the trusts was fraudulent; and (3) Husband failed to transfer properly the assets in question into the trusts.  Contrary to Wife's argument, trusts like those here are exempt from equitable division absent a finding of fraud.  Because the trial court's finding that Husband's transfers of assets into the trusts were not fraudulent is supported by evidence in the record, we affirm the trial court's rejection of Wife's fraudulent transfer claim.  Wife's other claims are unavailing, as well, with one exception:

we agree with her that transfers of the contents of two brokerage accounts into the trusts were ineffective under OCGA § 53-12-25 (a) because the accounts erroneously listed Husband as trustee. We therefore remand for the trial court to redistribute the marital assets, including the assets in those two accounts.

Husband and Wife were married in 1993 and had one child, born in 2004. Husband and Wife had a rocky marriage and began sleeping separately following their daughter's birth. Husband testified that, although Wife threatened to divorce him many times, he never took her threats seriously and did not consider them to be separated until she actually filed for divorce in 2014.

This litigation concerns two trusts created by Husband. In March 2008, Husband created an irrevocable trust, the Gibson Family Trust (the "GF Trust"), naming his mother, Julia Gibson, as trustee and Wife, their daughter, and their daughter's descendants as beneficiaries. The terms of the trust gave the trustee the discretion to distribute income and principal to Wife and their daughter during Husband's life and in the event of his death, and stripped Wife of her rights and interests in the trust if Husband and Wife divorced or legally separated. The trust also provided certain rights of withdrawal to the Gibsons' child or her legal guardian. In July 2012, Husband created a second irrevocable

trust, the SLG Trust, again naming his mother as trustee, and naming multiple beneficiaries, including his spouse and his descendants. The trust gave all beneficiaries a right of withdrawal subject to certain limits. Between 2010 and 2013, Husband purported to place approximately $3.2 million worth of assets, including bank and brokerage accounts, life insurance policies, and an ownership interest in a certain entity, S. Gibson Properties, LLC, into the GF Trust and SLG Trust ("the Trusts") collectively. Husband was neither a trustee nor a beneficiary of either trust.

Wife filed for divorce in July 2014. In her petition, as amended, Wife raised a conversion claim against Husband and fraudulent transfer claims against Husband and the trustee of the Trusts.[1] Wife claimed that the conveyances to the Trusts were fraudulent because they were made with the intent to hinder, delay, or defraud Wife in the event of divorce. At the six-day bench trial, Husband testified that the GF Trust was set up for liability protection purposes and for the benefit of his daughter. Husband testified that he and Wife never discussed financial matters. The undisputed trial testimony was that Wife did

---

[1] Husband's mother was named as a party to the divorce case as the trustee, but Dr. Robert Kaufmann was later substituted for the mother after he replaced her as the trustee of the Trusts.

3

not know about the Trusts or her beneficiary status under them until she filed for divorce, save for an envelope bearing the name of the GF Trust that she saw earlier in 2014; Husband told her it was "for tax purposes."

Following the trial, the trial court found that $2.2 million in assets was marital property subject to equitable distribution. The court involuntarily dismissed Wife's fraudulent transfer and conversion claims, denying her request that the additional $3.2 million in assets placed in the two Trusts be subjected to equitable division. The trial court found that Husband and Wife did not have a confidential relationship because they did not maintain joint financial accounts or share financial information. The court found that Husband did not form or fund the Trusts at a time when he knew Wife was contemplating divorce or with actual intent to defraud her, that he did not actively conceal the transfers from Wife, and he delivered dominion and control of the assets to the trustee before Wife filed for divorce. The court also found that, although two Charles Schwab accounts purportedly in the Trusts listed Husband as trustee, this was due to the brokerage firm's administrative error, and Husband demonstrated his intention to convey the assets to the Trusts because he listed the Trusts' federal tax

4

identification numbers on the accounts. Wife filed an application for discretionary appeal, which we granted.[2]

In reviewing a bench trial, we view the evidence in the light most favorable to the trial court's rulings, defer to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous. McDonald v. McDonald, 289 Ga. 387, 387 (1) (711 SE2d 679) (2011); Bloomfield v. Bloomfield, 282 Ga. 108, 108 (646 SE2d 207) (2007). "It is a question of law for the court whether a particular category of property may legally constitute a marital or non-marital asset, but whether a particular item of property actually is a marital or non-marital asset may be a question of fact for the trier of fact." Highsmith v. Highsmith, 289 Ga. 841, 842 (1) (716 SE2d 146) (2011) (citation and punctuation omitted); see also Bloomfield, 282 Ga. at 108 (1) (factual finding as to whether a particular item is marital or non-marital property must be upheld if supported by any evidence).

---

[2] Wife's application was filed on June 3, 2016. Under the Appellate Jurisdiction Reform Act of 2016, Ga. L. 2016, p. 883, the Court of Appeals was given subject matter jurisdiction over "[a]ll divorce and alimony cases" in which a notice of appeal or application to appeal is filed on or after January 1, 2017. Id. at pp. 885-886, §§ 3-1 (codified at OCGA § 15-3-3.1 (a) (5)), 6-1 (c) (effective date). Thus, appeals in future cases of this sort will go to the Court of Appeals instead of this Court. See Dallow v. Dallow, 299 Ga. 762, 771 (2) (791 SE2d 20) (2016).

The trial court's involuntary dismissal of Wife's fraudulent transfer and conversion claims pursuant to OCGA § 9-11-41 (b) may be reversed only if "the evidence demands a contrary finding." Smith v. Ga. Kaolin Co., 269 Ga. 475, 476 (1) (498 SE2d 266) (1998) (citation and punctuation omitted).

Wife argues that the trial court erred in failing to classify the trust assets as marital assets, contending that the assets are subject to equitable distribution irrespective of any fraud on the part of Husband. She also argues that Husband's actions amounted to fraud as a matter of law. As an alternative basis for reversal, Wife argues that for a host of reasons Husband did not legally deliver the assets to the trustee before Wife filed for divorce.

1.     *Property in the Trusts is subject to equitable division only if Wife can show that the transfers into the Trusts were fraudulent.*

Wife first argues that, irrespective of Husband's motives, the property in the Trusts are marital property because he placed the property in trust during the marriage without her knowledge and consent. Saying the matter is an issue of first impression for this Court, Wife cites decisions from other states for the proposition that other jurisdictions routinely construe marital assets placed in trust as marital property subject to equitable division in a divorce proceeding.

6

This is not an issue of first impression for our Court, which has permitted property placed in certain types of trusts to be exempt from equitable division. "The law of contracts and titles is respected in divorce cases." Armour v. Holcombe, 288 Ga. 50, 52 (701 SE2d 169) (2010). Therefore, property that has been conveyed to a third party is not subject to equitable division absent a showing of fraudulent transfer. See id. If a spouse places property in a trust of which he is the sole beneficiary, that property may be subject to equitable division. See Speed v. Speed, 263 Ga. 166 (430 SE2d 348) (1993). But if a spouse is not the sole beneficiary of a trust, the corpus of the trust is not subject to the other spouse's claim of distribution. See McGinn v. McGinn, 273 Ga. 292, 292 (540 SE2d 604) (2001).[3]

---

[3] Wife cites Pina v. Pina, 290 Ga. 878 (725 SE2d 301) (2012), for the proposition that we have "at least implicitly recognized that marital property in trust remains marital property." In that case, we rejected the appellant's claim that the trial court erred in awarding to his wife in equitable distribution, without sufficient evidence of the property's value, a certain property that she had placed in trust for the benefit of her three children. There is no indication in that opinion that the wife in that case argued that the property, purchased by the wife prior to the marriage, should have been exempt from equitable division for the reason that she had placed it in trust. Rather, we considered the parties' arguments regarding the extent to which an increase in the value of the home could be attributed to marital contributions and thus subject to equitable distribution. Thus, Pina does not stand for the proposition that "marital property in trust remains marital property." See Gordy Tire Co. v. Dayton Rubber Co., 216 Ga. 83, 89 (1) (114 SE2d 529) (1960) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citations and punctuation omitted)).

7

Here, Husband is not a beneficiary of the Trusts at all. He is not a trustee of the Trusts. Therefore, for equitable division purposes, the transfers of property to the Trusts were the equivalent of transfers to a third party, such that the property is subject to equitable division only if Wife can show that the transfers were fraudulent.[4]

2. *The trial court's rejection of Wife's fraudulent transfer claim is supported by evidence in the record.*

To that end, Wife argues that Husband's actions in placing the assets in question in trust amounted to fraud. She relies on our case law emphasizing the

---

[4] Wife cites to several cases from foreign jurisdictions to support her claim that trust assets may be considered marital property subject to equitable division, but those cases are not persuasive authority for the notion that the corpus of a trust always must be converted into marital property. In Janosek v. Janosek, 2007 Ohio 68 (Ohio Ct. App. 2007), the Ohio Court of Appeals noted that under that state's law, property titled in the name of a third party but paid for with marital assets may be treated as marital property, and affirmed the trial court's exercise of discretion to divide equally between the husband and wife the cash value of three insurance policies held in trust. Authority from this Court, however, would preclude the reaching of assets held by a third party in trust. See McGinn, 273 Ga. at 292. Wife also cites Schneider v. Schneider, 864 S2d 1193 (Fla. Dist. Ct. App. 2004), but in that case, the trial court specifically found that the husband committed fraud in placing assets into a trust, while the trial court here found no evidence of fraud. Moreover, in Schneider, the Florida court discussed a prior decision, Hedendal v. Hedendal, 695 S2d 391 (Fla. Dist. Ct. App. 1997), that reversed a trial court's determination that funds in an irrevocable trust for the benefit of the parties' son were the husband's asset, distinguishing Hedendal on the basis that it did not indicate the circumstances of the creation of the trust. Wife also attached to her brief a case from Arizona that specifically says it does not create legal precedent, and also attached a New York case where the husband was a beneficiary in the trust. None of these cases stand for the proposition that trust assets held by a third party (trustee) are subject to equitable division where neither spouse is a beneficiary of the trust.

"confidential relationship" between spouses, saying this means that Husband's failure to tell her about the transfers made those transfers fraudulent as a matter of law. See Murray v. Murray, 299 Ga. 703, 705 (791 SE2d 816) (2016); Beller v. Tilbrook, 275 Ga. 762, 762-763 (3) (571 SE2d 735) (2002); Adair v. Adair, 220 Ga. 852, 855 (1) (142 SE2d 251) (1965). In finding that there is generally a confidential relationship between spouses, we have relied in part on OCGA § 23-2-58, which provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

See Murray, 299 Ga. at 705; Beller, 275 Ga. at 762 (3). And we reaffirmed just last year that "spouses enjoy a confidential relationship entitling one to repose confidence and trust in the other." Murray, 299 Ga. at 705 (citation and punctuation omitted).

The trial court relied on evidence of the particular circumstances of the parties' rocky marriage to conclude that they "were not in a confidential relationship as to their respective financial circumstances." The trial court cited

9

evidence that the parties did not maintain joint financial accounts or share their "personal financial information," although Husband made regular contributions to certain household expenses. The court also cited the parties' lack of physical intimacy and failure to share a bedroom in the later years of their marriage. But our previous conclusions about the confidential relationship of marriage have not turned on these sorts of case-by-case considerations. The trial court erred in its analysis in this regard.

But this error does not warrant reversal. To say that spouses generally enjoy a confidential relationship that entitles one to trust the other does not answer the question of what exactly one spouse is required to disclose to the other. We have cited the presumption of trust between spouses for the unremarkable conclusion that when a wife sues her husband for giving her genital herpes, his untruthful statements as to his health amount to fraud that tolls the statute of limitations. See Beller, 275 Ga. at 762-763 (2)-(3) (affirming award of damages on personal injury claim filed in connection with divorce). And we have held that when a spouse affirmatively seeks the other's agreement on a matter related to the termination of their marriage, he must do so with candor. See Murray, 299 Ga. at 705 (evidence supported trial court's conclusion

10

that post-nuptial agreement was unenforceable because husband falsely promised to tear it up); Adair, 220 Ga. at 854-856 (1) (trial court erred in dismissing wife's petition to have divorce decree set aside because allegations, if true, would show that she signed divorce-related papers based on omissions and misrepresentations as to what they contained).  But we have never said that a person must gain the consent of or even inform his or her spouse before undertaking *every* financial transaction, whether a moderate lunch bill, a generous holiday gift to a friend, or a $50 charitable contribution.

Of course, this case is not about a $50 charitable contribution. The size and circumstances of the financial transactions at issue here could give rise to some suggestion of fraud.  For example, our Court of Appeals has concluded that a husband's execution of a settlement agreement in contemplation of divorce created a question of fraud for a jury when the agreement required him to pay his wife $125,000 as an equitable division of marital property, execute a will in which he designated certain people beneficiaries, and not make any gift that would substantially reduce his estate, and yet just a week prior to execution of agreement he had given his future wife $472,000.  See Miller v. Lomax, 266

11

Ga. App. 93, 96-98 (2) (b) (596 SE2d 232) (2004).[5]

At the time of the transactions at issue in this case, Georgia's Uniform Fraudulent Transfers Act ("UFTA") provided at OCGA § 18-2-74 (a) (1) that

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.][6]

Key terms in this provision were broadly defined: a "creditor" was defined as "a person who has a claim," a "debtor" meant "a person who is liable on a claim," and a "claim" was "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

---

[5] Miller was an appeal from a grant of summary judgment, and thus the question of deference to the trial court's factual findings did not arise.

[6] The UFTA was amended in 2014 and was renamed the Uniform Voidable Transactions Act. The sole change to the quoted subsection was that the Legislature substituted "voidable" for the word "fraudulent." Ga. L. 2015, pp. 996, 1022, § 4A-1.

OCGA § 18-2-71 (3), (4), (6) (2003). And we have indicated that a predecessor statute was implicated by questions of whether a husband's transfer of property was done with intent to delay or defraud his wife in her collection of alimony. See Lewis v. Lewis, 210 Ga. 330, 332 (2) (80 SE2d 312) (1954). But the existence of actual intent to defraud remains a question for the finder of fact. See SRB Inv. Svcs., LLLP v. Branch Banking & Trust Co., 289 Ga. 1, 4 (2) (709 SE2d 267) (2011). This remains true even in the context of the spousal relationship. See Lewis, 210 Ga. at 332-334 (2) (whether husband executed deed — during separation, but prior to divorce — with intent and purpose of defeating alimony was an issue for jury, not the court).

The trial court determined after a lengthy bench trial that Husband's transfers of property to the Trusts were not fraudulent. The trial court properly cited OCGA § 18-2-74 (b), which provided a non-exclusive list of factors, or "badges of fraud" that might be considered in determining the existence of actual intent to defraud under the former UFTA. The trial court made factual findings to the effect that several of these factors weighed against concluding that Husband intended to defraud Wife, finding that Husband did not actively conceal the transfers from Wife, did not retain possession or control of the assets

13

transferred, did not transfer substantially all of his assets or become insolvent after the transfers, and did not abscond. There is evidence to support these findings, and they are sufficient to support the trial court's ultimate conclusion that the creation and funding of the Trusts was not fraudulent.

3. *Wife's arguments that the transfers to the Trusts were invalid are unavailing, with the exception of her argument that transfers of assets held in the Charles Schwab accounts were incomplete under OCGA § 53-12-25 (a).*

Wife also raises various other arguments that the transfers to the trust were not legally effectuated.

(a) First, Wife argues that the trial court erred in validating Husband's purported transfer of an insurance policy and an interest in S. Gibson Properties, LLC to the SLG Trust. She argues that this was error because both the insurance policy and the interest in S. Gibson Properties were actually owned by Gibson Partners, L.P., and the transfer documents did not indicate that Husband was executing them in any representative capacity. She correctly points out that a person cannot convey good title to that which she does not own. See Smith v. Hooker/Barnes, Inc., 253 Ga. 514, 514 (1) (322 SE2d 268) (1984). But Husband's estate-planning attorney, Bryan Galat, testified that Gibson Partners was owned entirely by Husband — 99 percent personally, and 1 percent

14

by S. Gibson Management, which he owned and controlled.[7] Thus, Galat testified, Husband "had the autonomy to direct distribution" of Gibson Partners' assets to the trust and in fact was "the only one who had the authority to make that determination."[8] The finding, implicit or explicit, by the trial court that Husband properly transferred the assets to the SLG Trust therefore is supported by evidence in the record.

(b) Next, Wife argues that the trial court erred in concluding that all of Husband's transfers to the Trusts were complete despite Julia Gibson's testimony that she did not learn about any of the accounts or assets in the Trusts until Wife filed for divorce. Wife contends that this evidence means the transfers run afoul of (1) the trust instruments' express terms limiting additions to trust property to those the trustee accepts and approves; (2) Georgia law requiring that property be conveyed to a trustee in order to be placed in trust;

---

[7] Although Galat acknowledged that a document purported to show that Husband previously had assigned 99 percent limited partnership interest in Gibson Partners to the Gibson Family Trust, Galat maintained that he had reviewed other documentation and "every single thing he showed me showed that he was still the owner of the asset." Husband also testified that he owned Gibson Partners.

[8] In addition we note authority to the effect that where, as here, a trust is named as a beneficiary of a life insurance policy, that is sufficient for the creation of a trust. See Mary F. Radford, Georgia Trusts and Trustees § 2:4 (Dec. 2016 update) (citing OCGA § 53-12-2 (15), which defines "[t]rust property" to include "a contractual right to receive death benefits as the designated beneficiary under a policy of insurance").

15

and (3) OCGA § 44-5-80, which requires that all valid inter vivos gifts be delivered and accepted. Pretermitting Husband's argument that the trustee's lack of awareness of the contributions to the Trusts was irrelevant, Wife's argument fails because the trial court clearly did not credit the testimony by Julia Gibson on which Wife relies. Rather, the trial court said that Julia Gibson's deposition testimony, read into the record at trial, was "replete with examples of [her] obvious forgetfulness." For instance, the trial court noted that Julia Gibson testified that she did not from time to time receive documents in the mail related to the SLG Trust, then promptly said that she did receive them and did sign them. The trial court did credit the testimony of Galat to the effect that Julia Gibson was aware of and approved certain contributions into the SLG Trust. The trial court's factual finding consistent with that testimony is not clearly erroneous. Wife therefore cannot seek reversal on the basis that Julia Gibson never knew of, and thus did not accept, any contributions into the Trusts.

(c) Finally, Wife argues that the trial court erred by finding that Husband's intent to transfer $1.3 million held in accounts titled in Husband's name as trustee of the Trusts sufficed to satisfy the requirements of OCGA § 53-12-25 (a), which provides that "[t]ransfer of property to a trust shall require a

16

transfer of legal title to the trustee." We agree with Wife on this point.

Two Charles Schwab accounts purportedly held in the Trusts bore the name of Husband as trustee.[9] Rejecting Wife's argument that this fact rendered the purported transfer of the contents of the accounts to the Trusts ineffective under OCGA § 53-12-25 (a), the trial court found it sufficient that Husband intended to title these funds in the trustee's name. In support of its conclusion that this was Husband's intent, the trial court noted that both Schwab accounts list the federal tax identification numbers of the Trusts and not Husband's social security number, and pointed to a lack of evidence that Husband had spent any of the funds in question. The trial court concluded that titling assets in the name of the trustee was a mere "administrative task" that could be accomplished by the successor trustee after the completion of the divorce proceedings.

The language of the statute is plain, however, that legal title must be transferred to the trustee. Our Trust Code does not define precisely what it means to "transfer" "legal title" to a brokerage account or its contents. But Husband does not dispute that, as a general matter, OCGA § 53-12-25 (a) means

---

[9] On a trust account application for one account, it appears that Julia Gibson is listed as a co-trustee along with Husband, but her name is scratched out, a change initialed by Husband.

17

that a brokerage account should bear the name of the trustee in order to be held in trust. Rather, Husband argues that the statute does not apply to him because he is a living person, he did not self-settle the Trusts, and his intent to convey the assets to the Trusts is clear. But this argument must yield to the plain language of the statute. When construing a statute, we

> presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

Deal v. Coleman, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." Id. at 173 (1) (a) (citation and punctuation omitted).

Husband points to a Georgia trusts treatise as support for his argument that OCGA § 53-12-25 (a) does not render irrelevant evidence of a settlor's intent. According to the treatise, the intent of the committee that drafted OCGA § 53-12-25 (a) was to avoid confusion following a settlor's death as to which property was held by the settlor as an individual and which property was held

by the settlor as trustee of a self-settled trust.  See Mary F. Radford, Georgia

Trusts and Trustees § 2:4 (Dec. 2016 update).  Because there need not be any

confusion regarding a living settlor's intent to gift property to a trust, Husband

argues, OCGA § 53-12-25 (a) does not render a living settlor's intent irrelevant.

Husband also cites the same treatise for the notion that the committee that

drafted OCGA § 53-12-25 (a) found relevant that other Georgia statutes require

actual delivery of property to effectuate a gift, as proof of the donor's intent.

Radford, supra, § 2:4.  But "the legislature's intent is discerned from the text of

a duly enacted statute and the statute's context within the larger legal

framework."  State v. Riggs, 301 Ga. 63, 67 (2) (799 SE2d 770) (2017).

> [W]hen judges start discussing not the meaning of the statutes the
> legislature actually enacted, as determined from the text of those
> laws, but rather the unexpressed "spirit" or "reason" of the
> legislation, and the need to make sure the law does not cause
> unreasonable consequences, we venture into dangerously
> undemocratic, unfair, and impractical territory.

Merritt v. State, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) (punctuation omitted). See also Malphurs v. State, 336 Ga. App. 867, 871-872 (785 SE2d 414) (2016) ("[O]ur concern is with the actual text of statutes, not the subjective statements of individual legislators expressing their personal intent in voting for or against a bill."); Walters v. State, 335 Ga. App. 12, 15 n.3 (780 SE2d 720) (2015); Day v. Floyd County Bd. of Edc., 333 Ga. App. 144, 150-151 (775 SE2d 622) (2015) (Dillard, J., concurring fully and specially); Rutter v. Rutter, 316 Ga. App. 894, 896 (1) n.5 (730 SE2d 626) (2012); Keaton v. State, 311 Ga. App. 14, 26 n.17 (714 SE2d 693) (2011) (Blackwell, J., concurring in part and dissenting in part).[10]

Husband also argues that evidence of his intent to transfer to the Trusts title to the assets in the brokerage accounts distinguishes his situation from a Court of Appeals of Georgia decision that relied on OCGA § 53-12-25 (a) to conclude that in order for a deed to convey real property to a trust, the trustee must be designated as the grantee of legal title. In Ford v. Reddick, 319 Ga.

---

[10] The irrelevance of such considerations is even more obvious when, as here, the subjective "intent" we are asked to consider is not even that of the General Assembly. According to the cited treatise, the committee to which the treatise refers is a State Bar of Georgia Fiduciary Law Section committee, not a legislative committee. See Radford, supra, Preliminary Materials.

App. 482 (735 SE2d 809) (2012), a woman sought to set aside two warranty deeds executed by her attorney in fact, conveying the property to "Morison Outreach, a Trust." The Court of Appeals found that the trial court properly granted summary judgment to the woman's executor, citing a lack of evidence that "Morison Outreach, a Trust" was anything other than a trust and concluding that the deeds thus were invalid. Id. at 483 (2). Husband's attempt to distinguish this case is unavailing, given that the statute on which the decision is based is not limited on its face to situations in which the purported conveyor of the property disclaims having made the transfer.

The trial court's attempt to salvage the incomplete transfers of the assets in the Schwab accounts to the Trusts is unavailing. The trial court said that the names on the accounts could be changed after the divorce proceeding was concluded. But, as Wife points out, once those proceedings began, it was too late for Husband to put assets in trust and thereby exempt them from equitable division. Wife's initiation of the proceedings in July 2014 subjected the parties to a standing trial court order that prohibited the dissipation of marital assets except in the ordinary course of business. See also OCGA § 19-5-7 ("After a petition for divorce has been filed, no transfer of property by either party, except

21

a bona fide transfer in payment of preexisting debts, shall pass title so as to avoid the vesting thereof according to the final verdict of the jury in the case . . . .").  Therefore, the trial court erred by failing to include the assets placed in the Schwab accounts in 2012 in its equitable division of property between the parties.

The trial court ruled that even if OCGA § 53-12-25 "applie[d]" to the transfers into the Trusts generally, it did not apply to a May 2010 purported transfer, because that occurred prior to the July 1, 2010 effective date of the statute.  The court relied on Rose v. Waldrip, 316 Ga. App. 812 (730 SE2d 529) (2012) (the only other Georgia appellate decision construing OCGA § 53-12-25 (a)), which held that the statute did not invalidate certain after-acquired property clauses in a trust that was executed more than eight years before the statute became effective, where the settlor died before the statute became effective, as well.  That decision is distinguishable, however, because it involved a self-settled trust and relied on authority to the effect that, before enactment of OCGA § 53-12-25, "a settlor who declared a trust naming himself as trustee was not required to separately and formally transfer the designated property into the trust."  Id. at 819 (1) (b) (i).  The GF Trust, the trust at issue here, was not self-

22

settled; Husband did not name himself as trustee.

As explained in Rose, the Trust Code as revised in 2010 expressly applies to any trust regardless of the date created, subject to two exceptions: (1) "to the extent [application of the Revised Code] would impair vested rights" and (2) "except as otherwise provided by law." OCGA § 53-12-1 (b). The Georgia Constitution also forbids passage of retroactive laws that injure vested rights. See Rose, 316 Ga. App. at 817 (1) (b) (i) (citing 1983 Ga. Const. Art. I, Sec. I, Par. X). As the trust instrument here allows the GF Trust's beneficiaries, including the Gibsons' daughter, to begin making withdrawals immediately, application of the new Code to invalidate a purported transfer to the GF Trust could impair the daughter's vested rights. See Rose, 316 Ga. App. at 817 (1) (b) (i) (wife's rights in trust had already vested when revised Code enacted in 2010 because under trust's terms her rights to the assets took effect upon settlor's death in 2008). Therefore, we must determine whether, at the time of the May 2010 transfer, the law required that the assets be formally transferred to the trustee. See id.

We conclude that it did, at least in the case of a settlor, like Husband, who did not name himself as trustee. The Trust Code in May 2010 defined a

23

"trustee" as "the person holding legal title to the property in trust."[11] As with the new OCGA § 53-12-25 (a), this provides that the trustee must hold legal title to the assets in question for them to be considered in trust. Authority that such formal transfer into the trust was not required in the case of a self-settled trust is not at odds with this interpretation of the statute, because in that scenario the trustee does have legal title to the property even if the settlor does not formally transfer it, because the settlor and the trustee are the same person. See Rose, 316 Ga. App. at 817-819 (1) (b) (i). And such prior authority about the lack of a requirement of formal transfer in the case of self-settled trusts explains why OCGA § 53-12-25, which does impose such a formal transfer requirement even for self-settled trusts, is not redundant of OCGA § 53-12-2's definition of trustee. We therefore conclude that the trial court also erred by failing to include the assets transferred into one of the Schwab accounts in May 2010 in the equitable division between the parties. We remand for the trial court to revisit the task of equitable division in a manner consistent with this opinion.

Judgment affirmed in part and vacated in part, and case remanded. Hines,

---

[11] This definition was found in the former Trust Code at OCGA § 53-12-2 (11). It was carried over with a slight revision to the new Trust Code at OCGA § 53-12-2 (16).

24

C. J., Melton, P. J., Benham, Hunstein, Blackwell, and Grant, JJ., and Judge Ashley Wright concur. Judge Gail C. Flake concurs in Division 3 and dissents in Divisions 1 and 2.  Nahmias and Boggs, JJ., disqualified.

Decided June 5, 2017 – Reconsideration denied June 30, 2017.

Domestic relations. Fulton Superior Court. Before Judge Markle.

Barbara E. Keon; Gaslowitz Frankel, Craig M. Frankel, for appellant.

Boyd Collar Nolen & Tuggle, Robert D. Boyd, Kevin J. Rubin; King & Spalding, Letitia A. McDonald, Emily S. Newton, for appellees.

25