Lorene HOSKINS, Appellant,

v.

Anthony BEATTY, Executor of the Estate of Verner Reid, Deceased; Gilbert Verner Reid, a/k/a G.V. Reid; Beve Porter Beatty; Rocky Beatty, Individually and as Heir of Homer Beatty, Deceased; Pearl Harrington; June M. Reid; Willie Reid, a/k/a Billy Reid; Ronnie Beatty, Individually and As An Heir of Homer Beatty, Deceased; and Robert Reid, a/k/a Bob Reid, Appellees.

No. 2010–CA–000677–MR.

Court of Appeals of Kentucky.

July 1, 2011.

John T. Aubrey, Manchester, KY, for appellant.

Stella B. House, Manchester, KY, for appellee.

Before DIXON, STUMBO, and VANMETER, Judges.

*OPINION*

VANMETER, Judge:

Lorene Hoskins appeals from the judgment of the Clay Circuit Court which held that Anthony Beatty, executor of the estate of Verner Reid, and the heirs of Ver-

ner Reid [1] (hereinafter collectively referred to as "the heirs") could recover certain property, as well as accrued interest and earnings from the property that was bequeathed to them by Verner in his last will and testament. For the following reasons, we affirm in part, reverse in part and remand.

Verner died testate on April 14, 1988, in Manchester, Kentucky. Upon petition by Claudia Reid, Verner's sister, the Clay District Court probated Verner's last will and testament and appointed Claudia to serve as executrix of his estate. At the time of his death, Verner owned 120 shares of stock in the First National Financial Bank ("FNB") and a checking account with First National Bank of Manchester with a balance of $39,306.01.

Verner's last will and testament provides, in part, as follows:

ITEM II: I will, devise and bequeath unto my sister Claudia Reid all of my property, real, personal, and/or mixed, and of every description to [be] hers during her lifetime, free from all claims of any persons whomsoever. . . .

ITEM III: At the death of my sister Claudia Reid if any money or personal property remains, I will, devise and bequeath unto my nephew, Gilbert Verner Reid, a/k/a G.V. Reid $5,000.00; to my nephew Beve Porter Beatty $5,000.00; to my nephew Homer Beatty $5,000.00 and to my great nephew Rocky Beatty $5,000.00 to be theirs free from all claims of any persons whomsoever.

ITEM IV: Any personal property or money that remains after the above ITEM III is to be divided equally among my nieces and nephews, namely: Gilbert Verner Reid, a/k/a G.V. Reid,

Beve Porter Beatty, Homer Beatty, Pearl Harrington, June Reid, Lorene Hoskins, Billy Reid, Bob Reid, and Troy Reid and my great nephew Rocky Beatty, jointly and equally, share and share alike, to be theirs in its entirety, free from all claims of any persons whomsoever.

Claudia closed Verner's personal checking account and deposited the balance of $39,306.01 into an estate checking account. Two stock certificates totaling 120 shares in FNB were transferred from Verner to Claudia by the issuance of a new certificate of stock. In 1989, FNB issued new stock in First National Financial Corporation ("FNFC") and a new certificate was issued to Claudia for 400 shares, representing the 120 shares owned by Verner at the time of his death, and 280 shares owned by Claudia prior to Verner's death. In 1993, Claudia closed the estate checking account, which at that time held a balance of $15,776.30, and, on the same day, purchased a certificate of deposit (CD) for $15,000. From 1993 until 1998, the CD earned $3,354.55 in interest that was paid to Claudia. Beginning in 1999, Claudia arranged for the earned interest to add into the principal of the CD.

Claudia died testate on March 21, 2001. Upon Lorene's petition, the Clay District Court probated Claudia's last will and testament, which devised all of her property to Lorene. The shares of stock in FNFC were transferred to Lorene, and the proceeds from the CD, totaling $16,999.61, were transferred into a checking account for Claudia's estate. Lorene then filed a Kentucky Inheritance and Estate Tax Return and paid the Kentucky State Treasurer $94,177.72 out of the checking account for Claudia's estate. Lorene closed the

---

1. Gilbert Verner Reid, a/k/a G.V. Reid; Beve Porter Beatty; Rocky Beatty (individually and as an heir of Homer Beatty, deceased); Pearl Harrington; June M. Reid; Willie Reid, a/k/a Billy Reid; and Robert Reid, a/k/a Bob Reid.

estate checking account, and in 2002, the district court discharged her as executrix and accepted an informal settlement of Claudia's estate.

Thereafter, the heirs filed the underlying action to recover property devised to them by Verner's last will and testament, namely property in Lorene's possession that they claim passed to them upon Claudia's death. A trial was conducted, during which evidence was presented that between 1988 and 2002, $11,220 in dividends was paid on the 120 shares of stock; $8,820 was paid to Claudia during her life, and $2,400 was paid to Claudia's estate. Since 2003, per court order, all cash dividends have been paid to the Master Commissioner of the Clay Circuit Court.

At the conclusion of the trial, the court adjudged that the heirs were entitled to the 120 shares of stock in FNFC; the cash dividends paid on the stock between 1988 and 2002, totaling $11,220; $15,776.30, representing the balance of Verner's estate checking account at the time it was closed; $3,354.55, representing the interest earned on the CD; plus interest accrued on the CD since 2001. This appeal followed.

■■■ A trial court's findings of fact are reviewed under a clearly erroneous standard. *Gosney v. Glenn,* 163 S.W.3d 894, 898 (Ky.App.2005) (citations omitted). Such findings are not clearly erroneous if supported by substantial evidence. *Id.* (citations omitted). Substantial evidence is evidence that "has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citations omitted). The trial court's conclusions of law are reviewed *de novo. Id.* (citations omitted).

■■ The parties do not dispute that Verner's last will and testament granted to Claudia a life tenancy in the real and personal property owned by Verner at the time of his death and granted a vested remainder subject to divestment to the heirs. However, Lorene argues that Claudia consumed the property by transferring the assets into her own name, thereby divesting the interest that the heirs would have taken. We disagree.[2]

In the case of *Mitchell v. Mitchell,* 276 S.W.2d 470 (Ky.1955), the testator's will devised a life estate in all of his real and personal property to his daughter to "have, hold, keep and use, and dispose of as her own." In determining the extent of the rights held by the life tenant, the court stated, " '[w]e believe that when a testator uses such words he means that the first donee may use the estate for his own purposes and if any of it is left over, it shall go to the second donee.' " *Id.* at 471 (quoting *Weakley v. Weakley,* 237 S.W.2d 524 (Ky.1951)). Thus, the court determined that the devise gave the holder of the life estate unlimited power to encroach upon the corpus.

■■ However, " '[o]ne having a life estate and nothing more cannot by any possession, act, or declaration of his own enlarge that estate[.]' " *Gee v. Brown,* 144 S.W.3d 844, 846 (Ky.App.2004) (quoting *Superior Oil Corp. v. Alcorn,* 242 Ky. 814, 827, 47 S.W.2d 973, 981 (1931)). For example, in *Melton v. Wyatt,* 517 S.W.2d 242 (Ky.1974), which affirmed *Mitchell,* the court held that such a devise of a life estate creates an unlimited power to use and dispose of the property, except by the

---

**2.** Lorene also argues that the heirs' claims are time-barred per Kentucky Revised Statutes (KRS) 396.011 since they were not brought within six months; however, the time provisions of that statute apply only to claims that "arose before the death of the decedent[.]" Here, the claim against Lorene did not arise until after Claudia died. Therefore, KRS 396.011 is inapplicable.

making of a testamentary disposition. *Id.* at 244.

In the case at bar, Verner devised a life estate to Claudia in real and personal property "to be hers during her lifetime." Such a disposition, in accordance with *Mitchell* and *Melton*, grants Claudia an unlimited power to use and consume the estate property during her lifetime, but does not grant her the power to make a testamentary disposition of the remaining property. Claudia's actions to transfer the 120 shares of stock into her name and purchase a CD with cash from Verner's estate cannot be interpreted to enlarge her interest in the property. Thus, the property was not consumed or used to the extent it extinguishes the vested interest of the heirs. Verner's will makes it clear that whatever property from his estate still existing at the time of Claudia's death is to vest in the heirs pursuant to the specific bequests in ITEM III of the will. From our review of the record, it appears such property would include the 120 shares of stock in FNFC and the $15,000 used to purchase the CD.

However, the cash dividends and interest earned during the time of Claudia's life estate does not belong to the heirs. Absent a limitation imposed by the grantor, the law in Kentucky is clear that a life tenant is entitled to the income or benefits that accrue during the continuance of the life estate. *Lilly v. Connely,* 266 S.W.2d 102, 103 (Ky.1954). *See also Bowles v. Stilley's Ex'r,* 267 S.W.2d 707, 709 (Ky.1954) (holding that cash dividends from earnings of corporate stock declared during the continuance of the life estate are considered income and belong to the life tenant). Indeed, when a testator devises a life estate, it only creates a life tenancy in the property the testator held at death, not the income realized by the life tenant during the life estate. *Lilly,* 266 S.W.2d at 103. Here, during Claudia's life estate, the stocks earned $8,820 in cash dividends; the CD earned $3,354.55 in interest, with an additional $1,999.61 in interest that was added to the principal of the CD. Thus, the trial court erred by determining that the heirs were entitled to these earnings and by ordering Lorene to pay these earnings to the heirs.

Since this issue was not fully addressed by the trial court, we are without the necessary facts to precisely determine the remaining property or principal that existed at Claudia's death. From the facts that are before us, we can determine that the heirs are entitled to the 120 shares of stock in FNFC and $15,000, representing the value of the CD. Lorene is entitled to the cash dividends earned on the stock and the interest that accrued on the CD during Claudia's life. However, the trial court must make further factual findings to determine the amount of property or principal remaining from Verner's estate at Claudia's death.

The judgment of the Clay Circuit Court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

ALL CONCUR.