RENDERED: OCTOBER 13, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0005-MR

ELIZABETH BURCH                                                    APPELLANT

v.

APPEAL FROM MADISON CIRCUIT COURT
HONORABLE COLE ADAMS MAIER, JUDGE
ACTION NO. 21-CI-00329

LOUIS BERTRAND THOMAS III,
AND LAURA ELIZABETH THOMAS FRITZ,
INDIVIDUALLY AND AS CO-EXECUTORS
OF THE ESTATE OF LOUIS BERTRAND
THOMAS, JR.; MARY CAROL TATE;
MARGARET KATHLEEN CORNETT;
SAMUEL DELBERT FRITZ; LORI TILLET
THOMAS; KENNETH CHADWELL TATE;
CHARLES CHRISTOPHER TATE; AND
THOMAS J. SPALDING                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND MᴄNEILL, JUDGES.

KAREM, JUDGE:  Elizabeth Burch appeals from the Madison Circuit Court's order granting a declaratory judgment in favor of her sister's heirs.  Specifically, Elizabeth Burch contends the circuit court misapplied the doctrine of merger extinguishing any claim she may have to proceeds from a future sale of property. We disagree and affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties agree as to the facts of this case and further agree that the controversy is justiciable.

On December 22, 1986, Elizabeth Murphy deeded property, by gift intended as an early inheritance, to her daughters.  The real estate, located at 818 Barnes Mill Road in Richmond, Kentucky (hereinafter "the property") was conveyed to her daughters, Elizabeth M. Spalding (now Burch) and Mary Ellen Thomas and their respective spouses, Thomas Spalding, and Louis Bertrand Thomas Jr., in equal shares to each couple.  On that same date, Elizabeth Burch (hereinafter "Burch") and Thomas Spalding subsequently sold their 50% interest in the property to the Thomases.  The fair market value of the property at the time was established to be $80,600.  The Spaldings sold their interest to the Thomases for $40,300.  The Thomases executed a promissory note and mortgage to the Spaldings in the principal amount of $40,300.

To memorialize this transaction, the parties executed a written "Agreement of Sale of Real Property" (hereinafter "the agreement"). At issue in the case is the provision of the agreement governing the future sale of the property, entitled Article III – Future Sale and Proceeds, which provides as follows:

> The PURCHASER agrees to fully account to the SELLER as to any future sale. In the event that the net proceeds exceed EIGHTY THOUSAND SIX HUNDRED DOLLARS ($80,600.00), the PURCHASER shall receive fifty (50%) percent of this excess subject to the provisions of Article IV. In the event that the net proceeds are less than EIGHTY THOUSAND SIX HUNDRED DOLLARS ($80,600.00), then the SELLER agrees to reduce the purchase price herein proportionately, subject to the provisions in Article IV.

Notably, in 1991, the Spaldings divorced. Thomas Spalding subsequently assigned his mortgage/note interest in the property to his ex-wife, Burch:

> ASSIGNMENT OF NOTE AND MORTGAGE
>
> . . .
>
> WITNESSETH, that for and in consideration of the terms of a Separation and Property Settlement and Decree of Dissolution entered in Madison Circuit Court, Civil Action File No. 91-CI-440, the party of the first part [Thomas J. Spalding] assigns, transfers and conveys unto the party of the second part, [Elizabeth Burch] all his right[s], title and interest in a certain note dated December 23, 1986,[1] as secured by mortgage recorded

---

[1] The date identified by the parties for the sale between the siblings memorialized in the agreement varies throughout the record. The parties use varying dates between December 22,

-3-

> December 23, 1986, in Mortgage Book 328 at page 293,
> in the office of the Madison County Court Clerk[.]

Then, in 1997, after receiving payment in full from the Thomases for the $40,300, Burch executed a release discharging her interest in the subject mortgage and note:

> MORTGAGE RELEASE
>
> IN CONSIDERATION of Bert Thomas and Mary Ellen Thomas, paying in full that certain Promissory Note in the original principal sum of $40,300.00, dated December 23, 1986 in favor of Thomas J. Spalding and Elizabeth M. Spalding, and assigned by Thomas J. Spalding to Elizabeth M. Spalding by Assignment of record in Miscellaneous Book 78, page 168, in the Madison County Clerk's Office, the undersigned does hereby FULLY RELEASE and DISCHARGE that certain mortgage of record at Mortgage Book 328, page 293, in the Madison County Clerk's Office.

In 2021, thirty-six years after the execution of the mortgage between the siblings and twenty-five years following the extinguishment of the Thomases' debt to the Spaldings, the Thomas heirs[2] (hereinafter "heirs") sought a declaratory judgment to eliminate the risk of wrong action on their part following the future sale of the property. The circuit court entered a declaratory judgment finding that the agreement was neither unclear nor ambiguous. It interpreted the agreement to

1986 and December 26, 1986. However, it is clear all references to the agreement are to the document entitled "Agreement of Sale of Real Property" recorded in Mortgage Book 328 at page 293, in the office of the Madison County Clerk.

[2] Both Mary Ellen Thomas and Louis Bertrand Thomas, Jr. had passed prior to the filing of this action.

-4-

conclude that the parties' obligations under Article III were satisfied in 1997 when the Thomases paid off the debt and the mortgage was released. Its order stated in pertinent part as follows:

> The language of Article III concerning the contingency of net proceeds of future sale being less than $80,600.00 causes the Court to believe that the agreement is limited in application. That language provides that in the event a future sale brings net proceeds less than $80,600.00, "then the seller agrees *to reduce the purchase price herein* proportionately . . . ." (emphasis added). The Court interprets this language to mean the reduction would apply, if at all, to the purchase price in the agreement, which in this case refers to the sale and purchase of the Spalding interest in the property for $40,300.00. It is the only purchase price specifically covered by the agreement. However, that debt was ultimately paid in full in 1997 and the Mortgage was released. The Court does not see that any reason existed for Article III to apply once the Thomases satisfied their underlying debt owed to the Spaldings. The Court finds that Article III applied to any future sale that might occur while the Thomas[es'] debt remained outstanding and the obligation to pay their mortgage continued. The obligations of the parties were satisfied under the agreement once the Thomases paid off the debt in 1997 and the mortgage was released.

This appeal by Burch followed.

## STANDARD OF REVIEW

The appellees argue that the circuit court in this case granted a summary judgment in the declaratory judgment action and, in reliance on *Ladd v. Ladd*, 323 S.W.3d 772, 776 (Ky. App. 2010), contend that the standard of review

for a summary judgment should be applied. But the situation in *Ladd v. Ladd* is distinguishable. In *Ladd*, the appellee filed a motion for declaratory relief, but in subsequent filings identified the pending motion as one for summary judgment. The trial court treated the motion as one for summary judgment and recited the summary judgment standard in its findings of fact, conclusions of law, and judgment. *Id*. at 776. In this case, however, the circuit court did not state that it was granting summary judgment and plainly styled its order as one granting declaratory judgment. "The standard of review on appeal from a declaratory judgment is whether the judgment was clearly erroneous." *Public Service Commission of Kentucky v. Metropolitan Housing Coalition*, 652 S.W.3d 648, 651 (Ky. App. 2022), *discretionary review denied* (Oct. 12, 2022) (citing *American Interinsurance Exchange v. Norton*, 631 S.W.2d 851, 852 (Ky. App. 1982)). A trial court's findings of fact are not clearly erroneous if supported by substantial evidence. *Hoskins v. Beatty*, 343 S.W.3d 639, 641 (Ky. App. 2011) (citation omitted); Kentucky Rules of Civil Procedure ("CR") 52.01. As we have already stated, the underlying facts are not in dispute; rather, Burch challenges the circuit court's conclusions of law, which are reviewed *de novo*. *Hoskins*, 343 S.W.3d at 641. Specifically, "[t]he construction and interpretation of a contract is a matter of law and is reviewed under the *de novo* standard." *Cagata v. Cagata*, 475 S.W.3d

-6-

49, 56 (Ky. App. 2015), *discretionary review denied* (Dec. 10, 2015) (citations omitted).

## ANALYSIS

The heirs maintain that the doctrine of merger applies, and any obligation outlined in the agreement regarding the future sale of the property was extinguished upon the release of the mortgage. Burch disagrees and contends that Article III of the agreement was a collateral agreement, separate and apart from the mortgage and, as such, remains in effect in perpetuity.[3] We agree with the heirs.

Burch directs our attention to multiple cases to support her contention that the language of Article III within the original agreement was a collateral agreement, separate and distinct from the agreement for the purchase of the property. She attempts to equate the facts and holding in *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813 (Ky. 2019), to her circumstances. In *Lawrence*, a client negotiated a new payment plan with his attorney wherein he would pay a flat fee of no less than $450,000 the principal not to exceed $650,000. *Lawrence*, 599 S.W.3d at 819. The client "agreed to secure his payment with a mortgage on real estate he owned, and he signed a promissory note evidencing his

---

[3] The record, through both oral and written arguments, acknowledges Elizabeth Burch executed "AGREEMENT OF SALE OF REAL PROPERTY RELEASE" on May 7, 2021, releasing all rights as satisfied to any proceeds from the future sale of the property. However, Elizabeth Burch maintains she did not have the benefit of counsel at the time of signing and subsequently revoked the release. No written revocation was presented to the court. It appears from the record that the circuit court did not take the existence, or non-existence, of this release into account in its ruling and neither shall we.

-7-

debt." *Id.* The property was later foreclosed upon and sold at judicial auction. The client argued that a default judgment on the enforceability of the promissory note that was entered in favor of the attorney precluded the attorney from asserting a claim for enforceability of the mortgage. *Id.* at 821. The Kentucky Supreme Court held that the attorney was not precluded from asserting the claim because "[a] note and a mortgage given to secure it are separate instruments, executed for different purposes, and an action for foreclosure of the mortgage and upon the note are regarded and treated, in practice as separate and distinct causes of action, although both may be pursued in a foreclosure suit." *Id.* at 821.

*Lawrence* is easily distinguishable from the case *sub judice* in that it concerned two separate causes of action; one action for the promissory note seeking payment of legal services and a second foreclosure action on the property secured for payment of those services. Here two parties entered into one agreement from which a dispute arose over the longevity or duration of the conditions of that agreement.

In this case, the court applied the doctrine of merger and found that the condition in the agreement, specifically Article III, was extinguished when the debt was paid in full, and the mortgage released. "The merger doctrine holds that all prior statements and agreements, both written and oral, are merged into the deed and the parties are bound by that instrument." *Borden v. Litchford*, 619 S.W.2d

715, 717 (Ky. App. 1981). "Under the merger doctrine, upon delivery and acceptance of a deed the deed extinguishes or supersedes the provisions of the underlying contract for the conveyance of the realty." *Drees Co. v. Osburg*, 144 S.W.3d 831, 832 (Ky. App. 2003).

Burch correctly points out that the court never used the term "merger doctrine." However, the court used the *logic* of the merger doctrine, whether specifically identified as such or not. And, while Burch would have us use the holding in *Drees* to find merger doesn't apply, we are not persuaded by the conclusory language of that opinion, which states that "[c]ovenants in the antecedent contract that are not commonly incorporated in the deed, and that the parties do not intend to be incorporated, are often referred to as collateral agreements. The merger doctrine does not apply to collateral agreements." *Id.* at 833. Instead, the more recent opinion of this Court, *Harrodsburg Industrial Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529 (Ky. App. 2005), provides more thoughtful insight into this doctrine. In *Harrodsburg* this Court held that a purchase agreement merged into the deed, thus preventing the purchaser from prevailing on a breach of contract claim. It set forth the following exceptions to the merger doctrine: "[F]raud, mistake, or contractual agreement clearly not intended to be merged into the deed." *Harrodsburg*, 182 S.W.3d at 532 (citation omitted). None of these apply in this case. Article III of the agreement was part

and parcel of that agreement from the date of conveyance of the property.  There are no facts to suggest that Article III is a collateral agreement separate and independent from the purchase agreement.  As the circuit court stated, no reason "existed for Article III to apply once the Thomases satisfied their underlying debt owed to the Spaldings."  Thus, we conclude that the grant of declaratory judgment in favor of the heirs was proper.

For the foregoing reasons, the declaratory judgment of the Madison Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Jimmy Dale Williams
Randy Martin O'Neal
Richmond, Kentucky

BRIEF FOR APPELLEES:

Michael S. Fore
Isaac N. Claywell
Richmond, Kentucky